# IN THE UNITED STATES DISTRICT COURT
## FOR THE <u>EASTERN</u> DISTRICT OF TEXAS
### <u>LUFKIN</u> DIVISION

*FILED*
*U.S. DISTRICT COURT*
*EASTERN DISTRICT OF TEXAS*
*FEB 1 6 2018*

<u>DENNIS WAYNE HOPE  TDCJ# 579097</u>
Plaintiff's Name and ID Number

<u>TDCJ-ID Polunsky Unit</u>
Place of Confinement

BY
DEPUTY

CASE NO._____
(Clerk will assign the number)

v.

<u>Todd Harris 3872 FM 350 South Livingston,</u> Texas 77351
Defendant's Name and Address

9:18cv27 RC/ ZH

<u>Chad Rehse 3872 FM 350 South Livingston,</u> Texas 77351
Defendant's Name and Address

<u>Leonard Eschessa P.O. Box 99 Huntsville,</u> Texas 77342
Defendant's Name and Address
( DO NOT USE "ET AL.")

---

## INSTRUCTIONS - READ CAREFULLY

**NOTICE:**

**Your complaint is subject to dismissal unless it conforms to these instructions and this form.**

1.  To start an action you must file an original and one copy of your complaint with the court. You should keep a copy of the complaint for your own records.

2.  Your complaint must be <u>legibly</u> handwritten, in ink, or typewritten. You, the plaintiff, must sign and declare under penalty of perjury that the facts are correct. If you need additional space, **DO NOT USE THE REVERSE SIDE OR BACKSIDE OF ANY PAGE.** ATTACH AN ADDITIONAL BLANK PAGE AND WRITE ON IT.

3.  You must file a separate complaint for each claim you have unless the various claims are all related to the same incident or issue or are all against the same defendant, Rule 18, Federal Rules of Civil Procedure. Make a short and plain statement of your claim, Rule 8, Federal Rules of Civil Procedure.

4.  When these forms are completed, mail the original and one copy to the clerk of the United States district court for the appropriate district of Texas in the division where one or more named defendants are located, or where the incident giving rise to your claim for relief occurred. If you are confined in the Texas Department of Criminal Justice, Correctional Institutions Division (TDCJ-CID) , the list labeled as "VENUE LIST" is posted in your unit law library. It is a list of the Texas prison units indicating the appropriate district court, the division and an address list of the divisional clerks.

# FILING FEE AND *IN FORMA PAUPERIS* (IFP)

1. In order for your complaint to be filed, it must be accompanied by the statutory filing fee of $350.00 plus an administrative fee of $50.00 for a total fee of **$400.00**.

2. If you do not have the necessary funds to pay the fee in full at this time, you may request permission to proceed *in forma pauperis*. In this event you must complete the application to proceed *in forma pauperis*, setting forth information to establish your inability to prepay the fees and costs or give security therefor. You must also include a current six-month history of your inmate trust account. If you are an inmate in TDCJ-CID, you can acquire the application to proceed *in forma pauperis* and the certificate of inmate trust account, also known as *in forma pauperis* data sheet, from the law library at you prison unit.

3. The Prison Litigation Reform Act of 1995 (PLRA) provides "... if a prisoner brings a civil action or files an appeal *in forma pauperis,* the prisoner shall be required to pay the full amount of a filing fee." *See* 28 U.S.C. § 1915. Thus, the court is required to assess and, when funds exist, collect, the entire filing fee or a initial partial filing fee and monthly installments until the entire amount of the filing fee has been paid by the prisoner. If you submit the application to proceed *in forma pauperis*, the court will apply 28 U.S.C. § 1915 and, if appropriate, assess and collect the entire filing fee or an initial partial filing fee, then monthly installments from you inmate trust account, until the entire $350.00 statutory filing fee has been paid. (The $50.00 administrative fee does not apply to cases proceeding *in forma pauperis.)*

4. If you intend to seek *in forma pauperis* status, do not send your complaint without an application to proceed *in forma pauperis* and the certificate of inmate trust account. Complete all essential paperwork before submitting it to the court.

## CHANGE OF ADDRESS

It is your responsibility to inform the court of any change of address and its effective date. Such notice should be marked "**NOTICE TO THE COURT OF CHANGE OF ADDRESS**" and shall not include any motion for any other relief. Failure to file a NOTICE OF THE COURT OF CHANGE OF ADDRESS may result in the dismissal of your complaint pursuant to Rule 41(b), Federal Rules of Civil Procedure.

I.  PREVIOUS LAWSUITS:       SEE ATTACHED PAGE FOR ALL INFORMATION

    A. Have you filed *any* other lawsuit in state or federal court relating to your imprisonment?___YES___NO

    B. If your answer to "A" is "yes", describe each lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, giving the same information.)

        1. Approximate date of filing lawsuit: _____

        2. Parties to previous lawsuit:

            Plaintiff(s) _____

            Defendant(s) _____

        3. Court: (If federal, name the district; if state, name the county.) _____

        4. Cause number: _____

        5. Name of judge to whom case was assigned: _____

        6. Disposition: (Was the case dismissed, appealed, still pending?) _____

        7. Approximate date of disposition: _____

Rev. 05/15

# I. PREVIOUS LAWSUITS:

A. Yes

B. 1. April 1994

  2. Dennis Wayne Hope vs. James A. Collins

  3. Southern District of Texas(Galveston)

  4. Unknown

  5. Samuel Kent

  6. Dismissed

  7. Sometime in 1996

  1. August 2010

  2. Dennis Wayne Hope vs. Robert Treon et. al.

  3. Eastern District of Texas (Lufkin)

  4. Cause No: 9:10 cv 116

  5. Marcia Crone

  6. Dismissed

  7. November 22. 2010

## II. PLACE OF PRESENT CONFINEMENT

Plaintiff is a prisoner within the Texas Department of Criminal Justice Institutional Division (Polunsky Unit)

## III. EXHAUSTION OF GRIEVANCE PROCEDURES:

Yes, Step 2 attached

## IV. PARTIES TO THIS SUIT:

A. Plaintiff, Dennis Wayne Hope, Polunsky Unit 3872 FM 350 South Livingston, Texas 77351.

B. Defendant Todd Harris, Senior Warden Polunsky Unit within the Texas Department of Criminal Justice-Institutional Division (herein after TDCJ-ID) at 3872 FM 350 South Livingston, Texas 77351. He is subjecting Plaintiff Hope to Cruel and Unusual punishment, inhumane living conditions, denial of Due Process, retaliation, denial of mental health treatment.

Defendant: Chad Rehse, is the Major on Polunsky Unit within the TDCJ-ID at 3872 FM 350 South Livingston, Texas 77351. He is subjecting Plaintiff Hope to unsanitary living conditions, inhumane treatment, cruel and unusual treatment, retaliation, denial of Due Process, denial of mental health treatment.

Defendant: Leonard Eschessa is the Deputy Director of Support Operations within TDCJ-ID, his mailing address is P.O. Box 99 Huntsville, Texas 77342. He is denying Plaintiff Hope humane treatment, Due Process and both the 8th and

14th Amendments of the United States Constitution.

Defendant: Joni White, is the Assistant Director of Classifications within TDCJ-ID, her mailing address is P.O. Box 99 Huntsville, Texas 77342. She is denying Plaintiff Hope Due Process and violating his 8th and 14th Amendments of the United States Constitution.

Defendant: Kelly Enloe is the Chairperson of the State Classification Committee (Herein after SCC) within TDCJ-ID, her mailing address is P.O. Box 99 Huntsville, Texas 77342. She is denying Plaintiff Hope Due Process and violating his 8th and 14th Amendments of the United States Constitution.

Defendant: Melissa Benet is a SCC member within TDCJ-ID and her mailing address is P.O. Box 99 Huntsville, Texas 77342. She is violating Plaintiff Hope's 8th and 14th Amendments of the United States Constitution.

Defendant: B. Fiveash is a SCC member within TDCJ-ID, her mailing address is P.O. Box 99 Huntsville, Texas 77342. She is denying Plaintiff Hope Due Process and violating his 8th and 14th Amendments of the United States Constitution.

II.    PLACE OF PRESENT CONFINEMENT: _____

III.    EXHAUSTION OF GRIEVANCE PROCEDURES:

Have you exhausted all steps of the institutional grievance procedure?    __✓__YES __NO

Attach a copy of your final step of the grievance procedure with the response supplied by the institution.

IV.    PARTIES TO THIS SUIT:

A. Name and address of plaintiff: _____

_____

_____

B. Full name of each defendant, his official position, his place of employment, and his full <u>mailing</u> address.

Defendant #1: _____

_____

Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you.

_____

Defendant #2: _____

_____

Briefly describe the acts(s) or omission(s) of this defendant which you claimed harmed you.

_____

Defendant #3: _____

_____

Briefly describe the acts(s) or omission(s) of this defendant which you claimed harmed you.

_____

Defendant #4: _____

_____

Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you.

_____

Defendant #5: _____

_____

Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you.

_____

Rev. 05/15

1. Plaintiff Dennis Wayne Hope is a 49 year old prisoner who has been continiously held in solitary confinement for over twenty-three (23) years. He is currently housed on the Security Housing Unit ("SHU") at the Polunsky Unit with "Death Row". He is housed in a 9'x6' cell no larger than a parking space and about 3'x3' of that space is all that's left for him for him to move around inside the cell. He remains in this cell 24 hours a day on average of 174 days a year. The remaining 191 days in the year he spends an average of 23 hours a day in the cell.

2. All meals given to Mr. Hope is done so through a tray slot opening in the cell door. Everything passed to him comes through the tray slot. He eats all of his meals alone and in the cell. Many of the food trays he is given are dirty and unsanitary. The trays often have food on them from previous meals or grooves carved in them from other prisoners. These trays are only used for solitary confinement prisoners. Prisoners in general population don't deal with these unsanitary trays. These unsanitary trays have actually caused prisoners to get sick from the "Norovirus". The meals are cold even though delivered in a "Hot Cart" and the food portions are noticeably smaller than those given to G.P. prisoners. Many of the condiments like mustard and syrup are not provided to solitary confinement prisoners because they are more difficult to remove from the trays and floors after having sat for hours.

3. Prior to being removed from the cell for any reason Mr. Hope is required to submit to a strip search. He is then placed in handcuffs with his hands behind his back. Mr. Hope suffers from chronic lower back pain and the bending at this angle causes him pain in his lower back. Officials are aware of this and refuse to allow him to be handcuffed in the front.

4. While housed in the "SHU" Mr. Hope is limited to how much property he can possess as well as what kind of property he can possess. He is only allowed to possess two (2) cubic feet (1'x1'x2') of property. This drastically reduces the amount of reading material, clothing, pictures and commissary he can possess at one time. This amount is significantly smaller than that of G.P. prisoners, as the amount of commissary is too. Additionally, he cannot possess a razor, pencil sharpener or clothings that has elastic in it.

5. Due to being housed in solitary confinement Mr. Hope is denied almost all human contact. The only human contact he has had with another human in the

1.

last 23 years is with officers and medical staff. He is denied contact visits with family and when allowed visits it is done through a plexiglass partition and they must talk over a phone. He is denied access to a television and hasn't seen one since January 31, 1996. He is only permitted to use a telephone in an emergency situation and that must first be approved by administration. He can then only call a person on his approved visitors list which consists of ten (10) people (as opposed to 20 for G.P. prisoners), the call must be collect, to a land line, monitored by the person supervising the call and last no longer than five (5) minutes. The collect call is significantly more expensive than the direct calls G.P. prisoners are allowed to make. He is denied the opportunity to socialize with other prisoners, participate in religious activities, group recreation, vocational and educational programs.

6. Five (5) days a week Mr. Hope can come out of his cell for recreation for up to two (2) hours in a cage that is roughly four (4) times the size of his cell. This is providing there is no staff shortage or inclement weather.

7. The "SHU" housing area is loud and excessive amounts of noise can be heard 24/7. Prisoners beat and bang on doors, walls, holler through cell doors, argue and talk to themselves day and night. The housing area is a constant roar with frequent loud bangs and outburst of noise. Many times the officers cannot hear other prisoners because of the loud roar of the pods. Officers also contribute to the noise by hollering which cell door they want opened as the intercoms do not work.

8. The use of chemical agents (weapons) such as tear gas, pepper spray and pepper balls are common on the "SHU". In the last two (2) years Mr. Hope has been exposed to these gases at least ten (10) times through no fault of his own. He has been subjected to this exposure for over two (2) decades and therefore must suffer from the short-term and long-term effects of these gases. Officials are aggressive and careless with their use of these chemical agents and use them in excessive amounts in unwarranted situations with no regard to the other prisoners they expose to these gases.

9. A minimum of four (4) times a year the "SHU" is locked down to be searched, this is in addition to cells being randomly searched and inspected every other day. All prisoners are searched as their property and all of the cells. These lockdowns range from 14-30 days each.

10. While on lockdown Mr. Hope is given a "Johnny" (2 sandwiches in a sack with one being peanut butter) for each meal. All meals are in the form of a "Johnny" while on lockdown. The calories in the "Johnny" are significantly less than the food served on the tray. The reduced calorie diet Mr. Hope is

subjected to causes weight loss and constipation.

11. Prisoners serving in "Support Service" capacities sweep and mop the walkways and clean the showers. However, during lockdown the walkways are not mopped and the showers are not cleaned. Although showers are ran three (3) times a week during lockdown the showers are not cleaned during this period. The showers have mold and mildew on the walls, ceiling and door. Mr. Hope stopped going to the shower and only showers in his cell to reduce the chances of catching a "Staph infection" or skin rash.

12. Mr. Hope's access to legal material is drastically reduced due to being housed in solitary confinement. Three (3) times a week he is allowed to order three (3) cases from the unit law library. If he wants a certain key in Civil or Criminal law he must order one at a time and is not allowed access to the book. Many times he is forced to order the table of contents and order each key in an effort to find what he is looking for. This research process takes significantly longer than if he were afforded the opportunity to go to the law library or check out the entire legal book. He is also denied access to other prisoners who are knowledgeable in the law. If a holiday falls during a weekday then he is only afforded access to the materials two (2) times a week.

13. On February 22. 2012 Major Virgil McMullen ordered Mr. Hope's cell searched. Mr. Hope had been having outside advocates contact Classification about his continued confinement in solitary. As a result of this search no contraband was found, but his typewriter was taken (Mr. Hope used the typewriter to file grievances and write letters to officials) and not returned. Fifteen minutes after placing Mr. Hope back into his cell, the search team returned to search the cell again. Mr. Hope discovered a 10" screwdriver near the toilet in a red mesh bag commonly used to transport prisoners property. When he requested they get a video he was sprayed with pepper spray and ordered to submit to handcuffs. which he did. For eight days Mr. Hope was left nude in a cell with the pepper spray still on his body and nothing to clean it off with. He was not given food for forty-eight (48) hours per Major McMullen. Prior to this incident Mr. Hope and Major McMullen had run ins about why he is still in solitary confinement and whether a razor was a weapon. Mr. Hope challenged Major McMullen's interpretation of what a weapon is through the grievance process to the warden and regional director. Major McMullen took exception to that and it is Mr. Hope's belief that the 10" screwdriver was planted in his cell and was not accidentally left in his cell. Mr Hope was then charged with possession of a weapon for

picking up the screwdriver that was left in his cell. A subsequent investigation revealed the screwdriver belonged to the search team as evidenced by the serial number on it.

Prior to this incident Mr. Hope was not being moved from cell to cell. After the incident Mr. Hope has been moved to over 263 different cells as of date. Unit administration has since changed, but Mr. Hope continues to get moved to a different cell weekly.

14. When Mr Hope is moved into a cell it is not disinfected or otherwise cleaned nor is Mr. Hope provided with supplies to clean the cell with. Many times these cells have feces and urine on the walls, floor and door. Mr. Hope has complained and filed grievances to no avail. A number of times he was moved into a cell that had no lights. On June 15, 2016 officers had to literally use their flashlights to see to move Mr. Hope's property into the cell. On December 21, 2017 he was moved into a cell that had black mold on the back wall and floor, covering about 80% of the back wall. He was forced to move into the cell and denied cleaning supplies. For thirteen (13) days he reamined in that cell and began coughing. It took outside advocates contacting the warden to get him removed from that cell. Both the warden and Major Rehse are responsible for the frequent moves and placing Mr. Hope into these unsanitary cells.

15. Due to being housed in solitary confinement and requiring an escort everywhere he goes Mr. Hope has no privacy when consulting with medical or Mental health personnel. Many times his medical appointements are delayed or outright canceled due to lack of officers. It is not uncommon to be re-scheduled 3-4 times before seeing a provider. He has on occasion had to wait over sixty (60) days to see a provider to get his medications renewed. Medical and mental health personnel frequently make "cell-side" visits due to a shortage of staff and lack of escort teams. When doing so other prisoners can hear what is being discussed, it's one of the few things other prisoners will quieten down about, there is no privacy. Mr. Hope is denied a proper examination and his confidentiality in treatment is no longer confidential, all because he is housed in solitary confinement.

16. Mr. Hope has developed chronic lower back pain from living in cramped quarters for decades. He no longer sleeps on his mattress, instead he sleeps on his steel bunk so his back is flat. He has pain in both knees and has periodic swelling.

17. Mr. Hope has reported to mental health that he deals with bouts of anziety, depression, visual and auditory hallucinations, but is denied treatment for these conditions. He has been told he cannot be transferred from this

environment because he has an escape on his record from 1994. He also suffers from insomnia and sleeps fitfully. The noise and constant slamming of gates and doors every thirty (30) minutes contributes to this sleep interruption and deprivation. Although he has had thoughts of suicide he has never acted on them.

18. In the 23 years Mr. Hope has been in solitary confinement he was watched many prisoners physically harms themselves and some commit suicide. This has taken a mental toll on him and effects him daily. He's not sure how much longer he can endure this treatment.

19. Warden Harris and Major Rehse are responsible for ensuring that prisoners in the "SHU" are housed in sanitary living conditions and not subjected to harass ment, retaliation or cruel and unusual treatment. Instead, they are subjecting Mr. Hope to it.

20. on 30-day intervals, an entity called the Administrative Segregation Committee (ASC) holds a hearing on Mr. Hope. Mr. Hope is never allowed to attend these hearings. These hearings must be conducted by the rank of a captain or above, many times the Major or warden conduct them. This committee has no authority to release Mr. Hope from solitary confinement. The ASC reviews are a sham and meaningless because the SCC has already decided Mr. Hope will remain in solitary for the next 180 days. The six (6) reviews done in between the 180 day SCC reviews are meaningless and perfunctory.

21. The SCC schedules Mr. Hope a review every 180 days. This committee is supposed to determine whether prisoners remain in solitary confinement or if they are released to general population. Mr. Hope has attended over forty-eight (48) SCC hearings and remains in solitary.

22. On June 24, 2016 Mr. Hope appeared before SCC member Melissa Benet, a SCC member he had never gone before. He made both an oral and written statement available to her as she looked over his file. She saw no reason not to release him and informed him she would release him to a transitional program and then explained to him what the program was. She took his paperwork with her after the hearing. About 3 weeks later Mr. Hope received his hearing record in the mail. It indicated that he was to remain where he was at with no explanation for her changing her mind.

On December 3, 2016 SCC member Benet conducted Mr. Hope's SCC hearing. Mr. Hope asked her why he wasn't released to the transitional program like she said she would do in June of 2016. Ms. Benet stated, "you are high profile, I don't have the authority to release you." When he pressed for more information she informed him, "I was told that's not my call".

23. On June 8, 2017 SCC Chairperson Kelly Enloe conducted Mr. Hope's SCC

hearing. Mr. Hope presented a written request and made a verbal request to be released to G.P. Ms. Enloe informed Mr. Hope, "that's not my decision". When he asked her why she is reviewing him if she cannot make a decision she stated, "because you are on my list". It should be of note, for the past six (6) years Mr. Hope has had outside advocates contact various SCC and TDCJ officials asking what he must to to be released to G.P. They spoke and corresponded with Ms. Enloe at least four (4) times and she had no answers only quoted policy. At the conclusion of his hearing Ms. Enloe informed Mr. Hope, "having people contact the SCC isn't going to do you any good, I'll let Ms. White know your request."

24. On December 19, 2017 SCC member B. Fiveash conducted the SCC hearing on Mr. Hope. Mr. Hope submitted a written request and a verbal request to be released to G.P. Ms. Fiveash never looked at the paperwork Mr. Hope submitted and stated, "you're still in good shape I can't release you." Mr. Hope then asked her if that was even her call to which she stated, "that would be the Director's call". Mr. Hope asked why he can't be seen by someone with the authority to make a decision on his release and was told, "you need to talk to somebody else about that, I don't have that answer we'll see you in six (6) months".

25. In the 23 years Mr. Hope has been in solitary confinement he has gone before a number of SCC members who saw no reason not to release him to G.P. SCC Members Sheila Leblanc, Steve Rogers, D. Bilnoski, Lovelady, D. Buckner, April Thompson and Maryann Comstock had no problem releasing Mr. Hope after reviewing his file. In fact in April 2007 Mr. Steve Rogers ordered Mr. Hope's release to G.P and to be placed on medium custody. That release order was removed from his file by Vanessa Jones the then Chairperson. Again in January 2010 Mr. Rogers again ordered his release only to have it overruled again by Vanessa Jones. From that point on SCC members have been told not to release Mr. Hope making any hearing he is offered a sham and meaningless. Mr. Hope has not once been told what he must do in order to be released to G.P. It is atypical the way he is treated and the hardships imposed on him are anything but ordinary as it relates to prison life.

26. Each of the SCC members have failed to follow classification policies and use fair procedures or relevant standards when reviewing Mr. Hope. As a result they have denied him of any process he is due and continue to subject him to inhumane treatment that is decades of solitary confinement.

27. Although classification policy provides that prisoners are allowed to make a verbal and written statement, it is never considered when Mr. Hope attends the hearing. Mr. Hope never goes beofre a SCC member that has the authority to order his release Many times he has been told he will remain in solitary because he escaped in 1994. His current behavior or attitude are never considered. He is never told what is expected of him because they have no intentions of releasing him from solitary confinement. With SCC members like B. Fiveash, Vanessa Jones and Lovelady making statements about the physical shape Mr. Hope is in, it's clear they have no intentions of releasing Mr. Hope unless he is disabled or dead. His isolation is indefinite and the SCC hearings are a sham and perfunctory by their own admissions. Defendants do not afford Mr. Hope or other qualified persons or medical professionals any meaningful opportunity to weigh in on the continued appropriateness of his solitary confinement. The initial reason for placement in solitary continues to be the reason to continue his solitary confinement. Quite honestly, that can never change thus allowing defendants to continue to deny Mr. Hope any meaningful reviews or Due Process pertaining to being housed in solitary confinement now for over 23 years.

28. As recently as February 2017 Mr. Leonard Eschessa, the Deputy Director of Operations stated he functions in a capacity to make a decision whether to release Mr. Hope from solitary, but would not review his file. Mr. Echessa is responsible for ensuring that classification policies are followed to ensure prisoners are afforded their Due Process. He was made aware of the physical and mental health issues Mr. Hope has from beinghoused in solitary for decades.

29. In January and February 2017 Joni White Assistant Director of classifications was contacted by outside advocates for Mr. Hope. She stated that she would not allow Mr. Hope's release or make a recommendation for his release. She stated that he escaped in 1994 and she doesn't want the responsibility that goes along with making that decision. It is Ms. White that has instructed all SCC members to remain Mr. Hope in solitary. This decision was made years in advance and continues to this day. Ms. White was made aware that Mr. Hope suffers from physical and mental health related issues due to decades of isolation.

30. Defendants are aware that Mr. Hope is being deprived of his basic human needs for mental and physical health, enviromental stimulation, social interaction and dignity on account of long-term solitary confinement. Instead, they extend it. Mr. Hope has spent more time in solitary confinement than he was alive prior to coming to prison.

31. In December 2005 the Security Precautions Designator (SPD) committee reviewed and removed the "escape risk" designator from Mr. Hope's file. This committe reviews the same classification file the SCC does to determine if the SPD should be removed or if the prisoner is still an escape risk. They determined he was not an escape risk. In April 2007 SCC member Steve Rogers reviewed that same file and determined he wasn't an escape risk and ordered his release only to have that hearing record removed from the file. Again in January 2010 he ordered his release only to have it overruled in violation of classification policies. It's apparent Ms. White and Kelly Enloe have been working in conjunction to deny Mr. Hope any meaningful reviews or the Due Process afforded him from the United States Constitution.

32. Mr. Hope's continued placement in solitary confinement has far reaching consequences and places a stigma on him. Pursuant to Parole rules, an offender housed in solitary is ineligible to see a parole commissioner. That means he is never reviewed by a parole board member, only his file is reviewed. The fact that Mr. Hope hasn't had a disciplinary case in six (6) years, is at the highest time-earning class, is at Level 1 security detention status and has completed over 13 correspondence courses relating to cognitive intervention is never considered by the parole board. Mr. Hope's custody is their primary focus because it determines how much trust they give a person they are considering for parole. If a prisoner is housed in solitary confinement it demonstrates to the parole board that he cannot be trusted around staff or other prisoners without being handcuffed and escorted. This drastically reduces the chances of Mr. Hope ever getting a favorable parole review. As parole board members have stated, "if he cannot be trusted around staff and other offenders, why would we release him to society?"

33. The appeal process for the SCC decisions/hearings is for the prisoner to file a grievance. The grievance is "investigated" by the unit warden. The unit warden cannot overrule a SCC decision and doesn't even get a vote in the SCC hearing. It is meaningless for a prisoner to appeal their SCC decision and amounts to no appeal at all. In fact on a number of the grievances on the SCC hearing, their response was to write the SCC member; the same SCC member that he was grieving. Some of their responses merely tell you when your next review will be.

34. Mr. Hope is being retaliated against for exercising his right to file grievances and seek redress for actions he feels are unfair as well as

unconstitutional. The weekly cell moves and confiscation of his typewriter demonstarate unit officials are trying to prevent him from filing grievances and subjecting to hardships for doing so.

35. Both Warden Todd Harris and Major Chad Rehse are aware of each of these acts and have sat in on the SCC hearings as well as the ASC hearings. Each of them are being sued in the official and individual capacity.

36 . Deputy Director Leonard Eschessa, Assistant Director of Classifications Joni White, Kelly Enloe, Melissa Benet, B. Fiveash are each being sued in their official and individual capacity.

V.     STATEMENT OF CLAIM:

State here in a short and plain statement the facts of your case, that is, what happened, where did it happen, when did it happen, and who was involved. Describe how <u>each</u> defendant is involved. <u>You need not give any legal arguments or cite any cases or statutes.</u> If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Attach extra pages if necessary, but remember the complaint must be stated briefly and concisely.  IF YOU VIOLATE THIS RULE, THE COURT MAY STRIKE YOUR COMPLAINT.

SEE ATTACHED

VI.    RELIEF:

State briefly exactly what you want the court to do for you.    Make no legal arguments.  Cite no cases or statutes.

Mr. Hope requests injunctive, declaratory and monetary relief to address these violations of his Constitutional rights and a jury trial to decide it.

VII.   GENERAL BACKGROUND INFORMATION:

A. State, in complete form, all names you have ever used or been known by including any and all aliases.

Dennis Wayne Hope

B. List all TDCJ-CID identificaiton numbers you have ever been assigned and all other state or federal prison or FBI numbers ever assigned to you.

TDCJ # 579097

VIII.  SANCTIONS:

A. Have you been sanctioned by any court as a result of any lawsuit you have filed?  ____YES  _X_ NO

B. If your answer is "yes," give the following information for every lawsuit in which sanctions were imposed. (If more than one, use another piece of paper and answer the same questions.)

1.  Court that imposed sanctions (if federal, give the district and division): _____

2.  Case number: _____

3.  Approximate date sanctions were imposed: _____

4.  Have the sanctions been lifted or otherwise satisfied?                    ____YES ____NO

Rev. 05/15

C. Has any court ever warned or notified you that sanctions could be imposed? _____ YES _x̱_ NO

D. If your answer is "yes," give the following information for every lawsuit in which a warning was issued. (If more than one, use another piece of paper and answer the same questions.)

    1. Court that issued warning (if federal, give the district and division): _____

    2. Case number: _____

    3. Approximate date warning was issued: _____

Executed on: _2/5/18_
          DATE

_Dennis Wayne Hope_

_Dennis Wayne Hope_
         (Signature of Plaintiff)

## PLAINTIFF'S DECLARATIONS

1. I declare under penalty of perjury all facts presented in this complaint and attachments thereto are true and correct.
2. I understand, if I am released or transferred, it is my responsibility to keep the court informed of my current mailing address and failure to do so may result in the dismissal of this lawsuit.
3. I understand I must exhaust all available administrative remedies prior to filing this lawsuit.
4. I understand I am prohibited from brining an *in forma pauperis* lawsuit if I have brought three or more civil actions or appeals (from a judgment in a civil action) in a court of the United States while incarcerated or detained in any facility, which lawsuits were dismissed on the ground they were frivolous, malicious, or failed to state a claim upon which relief may be granted, unless I am under imminent danger of serious physical injury.
5. I understand even if I am allowed to proceed without prepayment of costs, I am responsible for the entire filing fee and costs assessed by the court, which shall be deducted in accordance with the law from my inmate trust account by my custodian until the filing fee is paid.

Signed this ___5th___ day of __February__, 20 _18_.
       (Day)         (month)       (year)

_Dennis Wayne Hope_

_Dennis Wayne Hope_
         (Signature of Plaintiff)

**WARNING: Plaintiff is advised any false or deliberately misleading information provided in response to the above questions may result in the imposition of sanctions. The sanctions the court may impose include, but are not limited to, monetary sanctions and the dismissal of this action with prejudice.**

Rev. 05/15

# Texas Department of Criminal Justice

## STEP 1    OFFENDER GRIEVANCE FORM

**OFFICE USE ONLY**

Grievance #: 2016174574

Date Received: JUL 0 8 2016

Date Due: 8-17-16

Grievance Code: 202

Investigator ID #: I0820

Extension Date: _____

Date Retd to Offender: AUG 01 2016

Offender Name: Dennis Hope    TDCJ # 579097

Unit: Polunsky    Housing Assignment: 12-D-38

Unit where incident occurred: Polunsky

---

**You must try to resolve your problem with a staff member before you submit a formal complaint. The only exception is when appealing the results of a disciplinary hearing.**

Who did you talk to (name, title)? Ms. Benet (SCC Member)    When? 6/24/2016

What was their response? I don't have the authority to release you

What action was taken? I'm appealing the hearing

**State your grievance in the space provided. Please state who, what, when, where and the disciplinary case number if appropriate**

On 6/24/2016 I attended a State Classification Committee (SCC) hearing before Ms. Benet. At this hearing Ms. Benet informed me that I'm considered "High Profile" and she doesn't have the authority to release me. She said it would take a special review and she couldn't do that. When I asked who would hold the special review she said she didn't know nor did she know when or if it would take place. I was afforded a meaningless review and none of the documents I presented or my statement or requests were considered. I am repeatedly scheduled for a hearing before someone who doesn't have the authority to authorize my release from Ad. Seg. The courts have repeatedly held that in order for a review to be meaningful, it must be before an official who has the authority to authorize a release. There are several others prisoenrs on this building who are treated in this very same manner due to the "high profile" designation. Additionally, the appeal process is to the unit warden who doesn't have a vote in the SCC hearing and doesn't have the authority to overrule the decision of the SCC or any of its members. That renders the appeal process for a SCC hearing meaningless. Policy is not being followed and my Due Process and Equal Rights are being violated. DwH

---

I-127 Front (Revised 11-2010)    **YOUR SIGNATURE IS REQUIRED ON BACK OF THIS FORM**    (OVER)

Appendix F

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**Action Requested to resolve your Complaint.**

That I be given meaningful reviews before a classification official who can authorize my release from Ad. Seg.  That my SCC hearings not be a sham and the appeal process be meaningful. DwH

Offender Signature: _Dennis Hope_     Date: _7/6/16_

**Grievance Response:**

This issue has been investigated. The State Classification Committee's decision was to remain you

on current status until 12-16 on the basis of escape risk, staff assaultive and weapons possession.

No further action is warranted at this time.

LANGLEY

Signature Authority: _____     Date: _7-29-16_

If you are dissatisfied with the Step 1 response, you may submit a Step 2 (I-128) to the Unit Grievance Investigator within 15 days from the date of the Step 1 response. State the reason for appeal on the Step 2 Form.

**Returned because:**     *Resubmit this form when the corrections are made.

☐ 1. Grievable time period has expired.
☐ 2. Submission in excess of 1 every 7 days. *
☐ 3. Originals not submitted. *
☐ 4. Inappropriate/Excessive attachments. *
☐ 5. No documented attempt at informal resolution. *
☐ 6. No requested relief is stated. *
☐ 7. Malicious use of vulgar, indecent, or physically threatening language. *
☐ 8. The issue presented is not grievable.
☐ 9. Redundant, Refer to grievance #_____
☐ 10. Illegible/Incomprehensible. *
☐ 11. Inappropriate. *

**UGI Printed Name/Signature:** _____

Application of the screening criteria for this grievance is not expected to adversely
Affect the offender's health.

**Medical Signature Authority:** _____

<table>
<tr><td colspan="2"><b>OFFICE USE ONLY</b></td></tr>
<tr><td>Initial Submission</td><td>UGI Initials:_____</td></tr>
<tr><td colspan="2">Grievance #:_____</td></tr>
<tr><td colspan="2">Screening Criteria Used:_____</td></tr>
<tr><td colspan="2">Date Recd from Offender: _____</td></tr>
<tr><td colspan="2">Date Returned to Offender: _____</td></tr>
<tr><td>2nd Submission</td><td>UGI Initials:_____</td></tr>
<tr><td colspan="2">Grievance #:_____</td></tr>
<tr><td colspan="2">Screening Criteria Used:_____</td></tr>
<tr><td colspan="2">Date Recd from Offender: _____</td></tr>
<tr><td colspan="2">Date Returned to Offender: _____</td></tr>
<tr><td>3rd Submission</td><td>UGI Initials:_____</td></tr>
<tr><td colspan="2">Grievance #:_____</td></tr>
<tr><td colspan="2">Screening Criteria Used:_____</td></tr>
<tr><td colspan="2">Date Recd from Offender: _____</td></tr>
<tr><td colspan="2">Date Returned to Offender: _____</td></tr>
</table>

I-127 Back (Revised 11-2010)

Appendix F



# STEP 2

### Texas Departmen~ ~riminal Justice

### OFFENDER GRIEVANCE FORM

**OFFICE USE ONLY**

Grievance #: _2016174574_

UGI Recd Date: ___AUG 0 3 2016___

HQ Recd Date: ___AUG 0 8 2016___

Date Due: _9.12_

Grievance Code: _202_

Investigator ID#: _11364_

Extension Date: _____

Offender Name: __Dennis Hope__     TDCJ # __579097__

Unit: __Polunsky__ (7L)     Housing Assignment: __12-D-30 14__

Unit where incident occurred: __Polunsky__

*You must attach the completed Step 1 Grievance that has been signed by the Warden for your Step 2 appeal to be accepted. You may not appeal to Step 2 with a Step 1 that has been returned unprocessed.*

Give reason for appeal (Be Specific).   *I am dissatisfied with the response at Step 1 because...*

The purpose for the filing of the Step 2 is to exhaust all available remedies as required by the federal courts in order to seek redress of the complained actions. In Step 1 the only "investigation" that was done was the looking at my classification file and looking at the I-189 form (SCC Hearing Record) and writing down what it indicated. Ms. Benet was never contacted nor was the questions asked why I'm "reviewed" by a SCC member who doesn't have the authority to order my release. I have it in writing from several SCC members where they clearly state they cannot release me because they don't have the authority and the authority must come from a SCC Chairperson or higher. Thus my question of why I'm seen by a SCC member that cannot release me. I don't expect corrective action to be made due to the filing of this complaint.

It is merely designed to show my objections and show a pattern of how the SCC handles these cases and the meaningless grievance process offenders are required to use to challenge these actions. *DWH*

I-128 Front (Revised 11-2010)     **YOUR SIGNATURE IS REQUIRED ON BACK OF THIS FORM**     (OVER)

Appendix G

_____

_____

_____

_____

_____

**Offender Signature:** _Dennis Hope_     **Date:** _8/3/16_

**Grievance Response:**

Your Step 2 grievance has been investigated by this office.  You were appropriately advised at the Step 1 level.  No further investigation warranted by this office.

MATT GROSS
ASSISTANT REGION DIRECTOR

**Signature Authority:** _____    **Date:** _9-9-16_

**Returned because:**    *Resubmit this form when corrections are made.*

☐ **1. Grievable time period has expired.**

☐ **2. Illegible/Incomprehensible.***

☐ **3. Originals not submitted. ***

☐ **4. Inappropriate/Excessive attachments.***

☐ **5. Malicious use of vulgar, indecent, or physically threatening language.**

☐ **6. Inappropriate.***

**CGO Staff Signature:** _____

**OFFICE USE ONLY**

**Initial Submission**     **CGO Initials:** _____

Date UGI Recd:_____

Date CGO Recd:_____

(check one) ____Screened   ____Improperly Submitted

Comments: _____

Date Returned to Offender:_____

**2nd Submission**     **CGO Initials:** _____

Date UGI Recd:_____

Date CGO Recd:_____

(check one) ____Screened   ____Improperly Submitted

Comments: _____

Date Returned to Offender: _____

**3rd Submission**     **CGO Initials:** _____

Date UGI Recd:_____

Date CGO Recd:_____

(check one) ____Screened   ____Improperly Submitted

Comments: _____

Date Returned to Offender: _____

February 8, 2018


United States District Court
Eastern District of Texas
Lufkin Division
104 N. 3rd St.
Lufkin, Texas 75901-3078

Dear Clerk:

Enclosed please find two (2) copies of my Civil Rights 42 U.S.C. § 1983

suit along with the $400.00 filing and administrative fee.  Please file

these with the court at your earliest convenience.  Thank you for your

time and attention to this matter.


CC: File                                    Respectfully Submitted,

                                            *Dennis Hope*
                                            Dennis Hope 579097
                                            Polunsky Unit
                                            3872 FM 350 South
                                            Livingston, Texas 77351

DENNIS W. HOPE 579097
POLUNSKY UNIT
3872 FM 350, SOUTH
LIVINGSTON, TEXAS 77351



United States District Court
Eastern District of Texas
Lufkin Division
104 N. 3rd St.
Lufkin, Texas 75901-3078