IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

JUN 18 2018

BY
DEPUTY _S_____

DENNIS WAYNE HOPE

VS. § Civil No. 9:18-CV-00027

TODD HARRIS, et al.,

## AMENDED COMPLAINT

### Jurisdiction and Venue

1. This is an action for injunctive, declaratory and monetary relief for violations of the Eight and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983. Jurisdiction lies under 28 U.S.C. §§ 1331 and 1343(a)(3) and (4).

2. Venue for this action lies in the Court under 28 U.S.C. § 1391 (b)(2) because the events and omissions giving rise to the claims occurred in the Eastern District of Texas.

3. Plaintiff relies on Rule 15 (a), Fed. R. Civ. P. to amend this complaint without leave of the Court or agreement of defendants. The date of service for Defendants answer was June 1, 2018.

### PARTIES

4. Plaintiff Dennis Wayne Hope is a person of full age of majority who is and was incarcerated in the Texas Department of Criminal Justice - Institutional Division (herein after TDCJ-ID), Polunsky Unit in Livingston, Texas.

5. Defendant Todd Harris is the Senior Warden at the Polunsky Unit within TDCJ-ID in Livingston, Texas. He is aware of the conditions and treatment of which plaintiff complains and has refused to take action to correct the situation. He is denying Plaintiff his Due Process and violating his Eigth and Fourteenth Amendments of the United States Constitution. He is being sued in his official and individual capacities.

6. Defendant Chad Rehse is the Major at the Polunsky Unit within TDCJ-ID in Livingston, Texas. He oversees the conditions of confinement and treatment of prisoners in Administrative Segregation (herein after Ad. Seg.) and at various times pertitent herein was a member of the State Classification Committee (herein after SCC). He is denying Plaintiff his Due Process and Eight and Fourteenth Amendments of the United States Constitution. He is being sued in his official and individual capacities.

7. Defendant Leonard Echessa is the Deputy Director of Support Operations within TDCJ-ID and is responsible for the overall treatment, conditions of confinement and classifications of Plaintiff at various times pertinent herein. He is aware of the situation and has refused to take corrective actions and correct the situation. He is denying Plaintiff his Due Process and Eigth and Fourteenth Amendments of the United States Constitution. He is being sued in his official and individual capacities.

8. Defendant Joni White is the Assistant Director of Classifications within TDCJ-ID and responsible for the overall classifications of the department, including Ad. Seg., at various times pertinent herein. She is aware of the situation and refuses to correct the situation or take corrective action. She is denying Plaintiff his Due Process and Eigth and Fourteenth Amendments of the United States Constitution. She is being sued in her official and individual capacities.

9. Defendant Kelly Enloe was the Chairperson for the SCC and is now a member of the SCC within TDCJ-ID. She is responsible for conducting reviews of prisoners in their classifications. She is aware of the situation and refused to take corrective action. She is denying Plaintiff Due Process and Eight and Fourteenth Amendments of the United States Constitution. She is being sued in her official and individual capacities.

10. Defendant Melissa Benet is a member of the SCC within TDCJ-ID and responsible for conducting reviews of prisoners classifications. She is aware of the situation and refused to take corrective action. She is denying Plaintiff his Due Process and Eight and Fourteenth Amendments of the United States Constitution. She is being sued in her official and individual capacities.

11. Bonnie Fiveash is a member of the SCC within TDCJ-ID and responsible for conducting reviews of prisoners classifications at various times pertinent herein. She is aware of the situation and refused to take corrective action. She is denying Plaintiff Due Process and Eight and Fourteenth Amendments of the United States Constitution. She is being sued in her official and individual capacities.

FACTUAL ALLEGATIONS

Plaintiff Dennis Wayne Hope is a 49 year old prisoenr who has been continiously held in solitary confinement (Ad. Seg.) for over twenty-three (23) years.. He is currently housed on the Security Housing Unit ("SHU") at the Polunksy Unit with "Death Row". He is housed in a 9'x 6' single cell no larger

than a parking space and about 3'x 3' of that space is all that's left for him to move around in the cell. He remains in this cell 24 hours a day on average of 174 days a year. The remaining 191 days in the year he spends an average of 23 hours a day in the cell.

13. All meals given to Mr. Hope is done so through a tray slot opening in the cell door. Everything passed to him comes through the tray slot. He eats all of his meals alone and in the cell. Many of the food trays he is given are dirty and unsanitary. The trays often have food on them from previous meals or grooves carved in them from other prisoners. These trays are only used for solitary confinement prisoners. Prisoners in general population (herein after G.P.) don't deal with these unsaitary trays. These trays have actually caused prisoenrs to get sick from the "Norovirus". The meals are cold even though delivered in a "Hot Cart" and the food portions are noticeably smaller than those given to G.P. prisoners. Many of the condiments like mustard and syrup are not provided to solitary confinement prisoners because they are more difficult to remove from the trays and floors after having sat for hours. Warden Harris and Major Rehse continue to subject Mr. Hope to these unsanitary feeding and living conditions. In the over 23 years Mr. Hope has been subjected to this treatment he has suffered food poisoning over a dozen of times.

14. Prior to being removed from the cell for any reason Mr. Hope is required to submit to a strip search. For over 23 years he has been unnecessarily removed of his dignity. On average he is strip searched four (4) times daily just to participate in recreation and shower. Deputy Director Eschessa, Warden Harris and Major Rehse have all ordered Ad. Seg. prisoners be treated in this manner. Prisoners in G.P. might get pat searched once a day depending on where they are going. Mr. Hope is then required to squat down with his hands placed behind his back and place his hands through a tray slot to be handcuffed. Failure to comply with this order can result in him being disciplinary or gassed with a chemical agent (pepper spray). Mr. Hope suffers from chronic lower back pain and the bending at that angle causes him great pain in his lower back and places great strain on his shoulders and rotator cuffs. Warden Harris and Major Rehse are aware of this and refuse to allow him to be handcuffed in the front thereby subjecting him to unnecessay physical pain and being deliberately indifferent to hi medical needs.

15. While in the "SHU" Mr. Hope is limited to how much property and what kind of property he can possess. He is only allowed to possess two (2) cubic feet (1'x 1'x 2') of property. This drastically reduces the amount of reading material, clothing, pictures and other personal items such as commissary hygiene items. This amount is significantly smaller than that of G.P. prisoners as is the amount of commissary too. Additionally, he cannot possess a razor, pencil sharpener or clothing that has elastic in it.

16. Due to beinghoused in solitary confinement Mr. Hope is denied almost all human contact. the only human contact he has had with another human in the last 23 years is with officers and medical staff. He is denied contact visits with family and when allowed visits it is done through a plexiglass partition and they must talk over a phone. He is denied access to a television and hasn't seen one since January 31, 1996. He is only permitted to use a telephone in an emergency situation and that must first be approved by administration. He can then only call a person on his approved visitors list which consists of ten (10) people (as opposed to 20 for G.P prisoners), the call must be collect, to a land line, monitored by the person supervising the call and last no longer than five (5) minutes. G.P. prisoners on the other hand are allowed to make unlimited calls daily with no duration restriction. The collect call averages $15.00 per five (5) minutes whereas prisoners in G.P. pay about .23¢ a minute. This creates a significant financial hardship on prisoners housed in Ad. Seg. and impedes on their ability to retain close ties with family. In the 23 years Mr. Hope has been confined to Ad. Seg. he has only made one (1) phone call, when his mother died in 2013. He is denied the opportunity to socialize with other prisoners, participate in religious activities, group recreation and vocational programs. By contrast, prisoenrs in G.P. work, socialize, live in dormitories, have educational and vocational training, attend religious services and have group recreation opportunities. The condition of Mr. Hope's confinement in Ad. Seg. almost totally deprives him of human contact, mental stimulus, physical activity, personal property and human dignity. Continued and continuing confinment under these conditions for over 23 years is inhumane and imposes atypical and significant hardship compared to ordinary prison life.

17. Five (5) days a week Mr. Hope can come out of his cell for recreation for up to two (2) hours in a cage that is roughly four (4) times the size of his cell. this providing there is no staff shortage or inclement weather.

18. The "SHU" is loud and excessive amounts of noise can be heard 24/7. Prisoners beat and bang on doors, walls, holler through cell doors, argue and talk to themselves day and night. The housing area is a constant roar with frequent loud bangs and outbursts of noise. Many times the officers cannot hear other prisoners because of the loud roar of the pods. Officers contribute to the noise by hollering which cell door they want opened as the intercoms on the pods do not work. Officers slam doors and beat a tray slot bar against the bars to get prisoners and the picket officers attention. These loud noises day and night deprive Mr. Hope of any quality sleep and only allows him to sleep fitfully several hours at a time. This has added to his anxiety and depression that he is suffering. Sleep is a basic human need that he is being deprived of by Warden Harris and Major Rehse.

19. The use of chemical agents (weapons) such as tear gas, pepper spray and pepper balls is common on the "SHU". In the last two (2) years Mr. Hope has been exposed at least ten (10) times through no fault of his own. On August 6, 2017 Mr. Hope was exposed to pepper spray through no fault of his own and at the direction of Major Rehse. Again on July 28, 2017 he was exposed to pepper spray for a prolonged period. Major Rehse instructed officers not to turn the exhaust fans on to clear out the gas because prisoners were making to much noise. On May 31, 2017 he was again exposed to pepper spray when another prisoner was sprayed and there was a delay in removing the gas from the air. Major Rehse instructs officers to delay clearing the air of gas so that other prisoners are exposed to it and will "think twice before making them gas them". He intentionally allows the gas to linger in the air well after the incident that involved the use of the gas is over. This subjects Mr. Hope and others to unnecessary exposure of chemical agents (weapons) deliberately at the direction of Major Rehse. He has been subjected to exposure of pepper spray and Tear gas for over two (2) decades due to being housed in Ad. Seg. and must suffer from the short-term and long-term effects of these gases. Officials are aggressive and careless with their use of these chemical agents (weapons) and use them in excessive amounts in unwarranted situations with no regard to the other prisoners they expose to these gases.

20 A minimum of four (4) times a year the "SHU" is locked down to be searched, this is in addition to cells being randomly searched and inspected every other day. All prisoners are searched as is their property and all of the

cells. These lockdowns range from 14-30 days each. By contrast, prisoners in G.P. are locked down twice a year.

21. While on lockdown Mr. Hope is given a "Johnny" (2 sandwiches in a sack with one being peanut butter) for each meal. All meals are in the form of a "Johnny" while on lockdown. The calories in the "Johnny" are significantly less than the food served on the tray. The reduced calorie diet Mr. Hope is subjected to causes weight loss and constipation. Warden Harris is responsible for ensuring prisoners are provided adequate food that is sufficient in calorie and nutritional value. He refuses to provide prisoners these basic human needs during lockdowns.

22. Prisoners serving in "Support Service" capacities sweep and mop the walkways and clean the showers. However, during lockdown the walkways are not mopped and the showers are not cleaned. Although showers are ran three (3) times a week during lockdown the showers are not cleaned during this period. The showers have mold and mildew on the walls, ceiling and door. Mr. Hope stopped going to the shower and only showers in his cell to reduce the chances of catching a "Staph infection" or skin rash. Major Rehse is exposing prisoners to unsanitary living conditions that jeopardize prisoners health.

23. Mr. Hope's access to legal material is drastically reduced due to being housed in solitary confinement. Three (3) times a week he is allowed to order three (3) cases from the unit law library. If he wants a certain key in Civil or Criminal law he must order one at a time and is not allowed access to the book. Many times he is forced to order the table of contents and order each key in an effort to find what he is looking for. This research process takes significantly longer than if he were afforded the opportunity to go to the law library or check out the entire legal book. He is also denied access to other prisoners who are knowledgeable in the law. If a holiday falls during a weekday then he is only afforded access to the materials two (2) times a week. Warden Harris is restricting prisoners access to legal material in solitary confinement in an effort to hinder their access to courts.

24. On February 22, 2012 Major Virgil McMullen ordered Mr. Hope's cell searched. Mr. Hope had been having outside advocates contact classification about his continued confinement in solitary. As a result of this search no contraband was found, but his typewriter was taken (Mr. Hope used the typewriter to file grievances and write letters to officials) and not returned. Fifteen

minutes after placing Mr. Hope back into his cell, the search team returned to search the cell again. Mr. Hope discovered a 10" screwdriver near the toilet in a red mesh bag commonly used to transport prisoners property. When he requested they get a video camera he was sprayed with pepper spray and ordered to submit to handcuffs, which he did. For eight days Mr. Hope was left nude in a cell with the pepper spray still on his body and nothing to clean it off with. He was not given food for forty-eight (48) hours per Major McMullen. Prior to this incident Mr. Hope and Major McMullen had run ins about why he is still in solitary confinement and whether a razor was a weapon. Mr. Hope challenged Major McMullen's interpretation of what a weapon is through the grievance process to the warden and regional director. Major McMullen took exception to that and it is Mr. Hope's belief that the 10" screwdriver was planted in his cell and was not accidentally left in his cell. Mr. Hope was charged with possession of a weapon for picking up the screwdriver that was left in his cell. A subsequent investigation revealed the screwdriver belonged to the search team as evidenced by the serial number on it.

Prior to this incident Mr. Hope was not being moved from cell to cell. After the incident Mr. Hope has been moved to over 263 different cells as of date. Unit administration has since changed, but Mr. Hope continues to get moved to a different cell weekly. In the last two (2) years Major Rehse has ordered Mr. Hope's moves. Major Rehse asserts that since Mr. Hope was being moved prior to him taking charge he will continue to get moved even though it serves no penological interest and was designed to harass and retaliateagainst him.

25. When Mr. Hope is moved into a cell it is not disinfected or otherwise cleaned nor is Mr. Hope provided with supplies to clean the cells with. Many times these cells have feces and urine on the walls, floor and door. Mr. Hope has complained and filed grievances to no avail. A number of times he was moved into a cell that had no lights. On June 15, 2016 officers had to literally use their flashlights to see to move Mr. Hope's property into the cell. On December 21, 2017 he was moved into a cell that had black mold on the back wall and floor, covering about 80% of the back wall. He was forced to move into the cell and denied cleaning supplies. For thirteen (13) days he remainedthat cell and began coughing. It took outside advocates contacting the warden to get him moved from that cell. Both the warden and Major Rehse are responsible for the frequent moves and placing Mr. Hope into these unsanitary cells. They are

aware of the problem and on December 26, 2017 Major Rehse personally saw the black mold on the back wall of cell number 12-EA-11. It was only when the Asst. Warden (Jefferson) over G.P. sent someone to inspect the cell and saw the widespread growth of the black mold did she order him removed from the cell and moved into another cell. Major Rehse was deliberately indifferent to Mr. Hope's physical and mental health.

26. Due to being housed in solitary confinement and requiring an escort everywhere he goes Mr. Hope has no privacy when consulting with medical or Mental health personnel. When Mr. Hope is seen in the examination room at least two officers stand there with him and listen to everything that is said. At no time is Mr. Hope afforded any privacy and one on one consultation with a healthcare provider or mental health care provider. Many times his medical appointments are delayed or outright canceled due to lack of escort officers. It is not uncommon to be re-scheduled 3-4 times before seeing a provider. He has on occasion had to wait over sixty (60) days to see a provider to get his medications renewed. Medical and mental health personnel frequently make "cell-side" visits due to a shortage of staff and lack of escort teams. When doing so other prisoners can hear what is being discussed, it's one of the few times other prisoners will quieten down about, there is no privacy. Mr. Hope is denied a proper examination and his confidentiality in treatment is no longer confidential, all because he is housed in solitary confinement where Major Rehse and Warden Harris require prisoners to be escorted by two (2) officers anytime they leave a cell. Absent the policies of Warden Harris and Major Rehse Mr. Hope wouldn't be denied privacy in his medical and mental health consultations and examinations or excessively delayed in seeing a provider. Each of them are aware of this problem and refuse to correct it.

27. Mr. Hope has developed chronic lower back pain from living in cramped quarters for decades. Mr. Hope never had this problem prior to placement in solitary confinement. He no longer sleeps on his mattress, instead he sleeps on his steel bunk so his back is flat. He has pain in both knees and has periodic sweeling. Limited movement in such close confinement for over 23 years has contributed to these ailments. Major Rehse has personally asked Mr. Hope why he doesn't sleep on his mattress and was made aware of his back and knees ailments.

28. Mr. Hope has reported to mental health that he deals with bouts of

anxiety, depression, visual and auditory hallucinations, but is denied treatment for these conditions. He has been told he cannot be transferred from this environment because he has an escape on his record from 1994. He also suffers from insomnia and sleeps fitfully. The noise and constant slamming of gates and doors every thirty (30) minutes contributes to this sleep interruption and deprivation. Sleep is a basic human need. Although he has had thoughts of suicide he has never acted on them. The decades of isolation has deteriorated both his physical and mental faculties.

29. In the 23 years Mr. Hope has been in solitary confinement he has watched many prisoners physically harm themselves and some commit suicide. This has taken a mental toll on him and effects him daily. He's not sure how much longer he can endure this treatment absent judicial intervention.

30. Warden Harris and Major Rehse are responsible for ensuring that prisoners in the "SHU" are housed in sanitary living conditions and not subjected to harassment, retaliation or cruel and unsual treatment. Both Warden Harris and Major Rehse order the moving of Mr. Hope weekly as a form of harassment and has done so for years without a valid penological reason. Both of them have sat on SCC meetings and contributed to the denial of any meaningful review by not discussing matters related to the hearing, but instead talking about the availability of firewood and whether or not it can be delivered. They are aware of the conditions Mr. Hope is confined in and deny him adequate reviews that if relevant information was considered would warrant his release from such restricted confinement.

31. On 30-day intervals, an entity called the Administrative Segregation Committee (ASC) holds a hearing on Mr. Hope. Mr. Hope is never allowed to attend these hearings. These hearings must be conducted by the rank of a Captain or above, many times the Major or Warden conduct them. This committee has no authority to release Mr. Hope from solitary confinement. The ASC reviews are a sham and meaningless because the SCC has already decided Mr. Hope will remain in solitary for the next 180 days. The six (6) reviews done in between the 180 day SCC reviews are meaningless and perfunctory.

32. The SCC schedules Mr. Hope a review every 180 days. This committee is supposed to determine whether prisoners remain in solitary confinement or if they are released to general population. Mr. Hope has attended over forty-eight (48) SCC hearings and remains in solitary. These reviews are perfunctory and a sham as they don't consider Mr. Hope's current attitude or behavior, they

instead rely on an incident that will never change from over 23 years ago.

33. On June 24, 2016 Mr. Hope appeared before SCC member Melissa Benet, a SCC member he had never gone before. He made both oral and written statement available to her as she looked over his file. She saw no reason not to release him and informed him she would release him to a transitional program and then explained what the program was. She took his paperwork with her after the ehearing. About 3 weeks later Mr. Hope received his hearing record in the mail. It indicated that he was to remain where he was at with no explanation for her changing her mind.

On December 3, 2016 SCC member Benet conducted Mr. Hope's SCC hearing. Mr. Hope asked her why he wasn't released to the transitional program like she said she would do in June of 2016. Ms. Benet stated, "you are high profile, I don't have the authority to release you." When pressed for more information she informed him, "I was told that's not my call." The purpose for the SCC review is to determine whether to release the prisoner from solitary confinement or remain him. While Ms. Benet conducted the hearing it was meaningless as she never had the authority to release Mr. Hope. The hearing was perfunctory and a sham as it was not used for the intended purpose; to provide Due Process for those housed in solitary confinement. Ms. Benet is aware of the effects that long term isolation has on prisoners subjected to it, both their mental and physical capacities. She is aware that Mr. Hope's treatment is not typical, nor is the amount of time he has been housed in isolation. She is further aware that the hardships Mr. Hope endures while in solitary confinement are significant when compared to those prisoners housed in G.P. and compared to the ordinary incident of prison life.

34. On June 8, 2017 SCC Chairperson Kelly Enloe conducted Mr. Hope's SCC hearing. Mr. Hope presented a written request and made a verbal request to be released to G.P. Ms. Enloe informed Mr. Hope, "that's not my decision". When he asked her why she is reviewing him if she cannot make a decision she stated, "because you are on my list". It should be of note, for the past six (6) years Mr. Hope has had outside advocates contact various SCC and TDCJ officials asking what he must do to be released to G.P. They spoke and corresponded with Ms. Enloe at least four (4) times and she had no answers only quoted policy. At the conclusion of his hearing Ms. Enloe informed Mr. Hope, "having people contact the SCC isn't going to do you any good, I'll let Ms. white know your request".

While all defendants can make a recommendation to release Mr. Hope from solitary confinement, Ms. Enloe had the authority to release Mr. Hope in 2016. Ms. Enloe has continued Mr. Hope's isolation despite her knowledge that he has been in isolation since 1994, that such extraordinarily long solitary confinement is inherently harmful and that any penological basis for his isolation expired long ago. Defendant Enloe never provided any notice for the reasons for his continued solitary confinement. This is the height of deliberate indifference.

35. On December 19, 2017 SCC member Bonnie Fiveash conducted the SCC hearing on Mr. Hope. Mr. Hope submitted a written request and a verbal request to be released to G.P. Ms. Fiveash never looked at the paperwork Mr. Hope submitted and stated, "you're still in good shape I can't release you". Mr. Hope then asked her if that was even her call to which she stated, "that would be the Director's call." Mr. Hope asked why he can't be seen by someone with the authority to make a decision on his release and was told, "you need to talk to somebody else about that, I don't have that answer we'll see you in six (6) months." Ms. Fiveash never bothered to review my file or consider any request Mr. Hope made because she had no intention of releasing him nor did she have the authority to release him. She is aware of the inherently harmful effects that long term isolation causes andboth the mental and physical ailment Mr. Hope suffers

36. In the 23 years Mr. Hope has been in solitary confinement he has gone before a number of SCC members who saw no reason not to release him to G.P. SCC member Sheila Leblanc, Steve Rogers, D. Bilnoski, Lovelady, D. Buckner, April Comstock and Maryann Comstock had no problem releasing Mr. Hope after reviewing his file. In fact in April 2007 Mr. Steve Rogers ordered Mr. Hope's release to G.P. and to be placed on medium custody. That release order was removed from his file by Vanessa Jones the then Chairperson. Again in January 2010 Mr. Rogers again ordered his release only to have it overrruled again by Vanessa Jones. From that point on SCC members have been told not to release making any hearing he is offered a sham and meaningless. Mr. Hope has not once been told what he must do in order to be released to G.P. It is atypical the way he is treated and the hardships imposed on him are anything but ordinary as it relates to prison life.

37. Each of the SCC members have failed to follow classification policies and use fair procedures or relevant standards when reviewing Mr. Hope.

As a result they have denied him of any process he is due and continue to subject him to inhumane treatment that is decades of solitary confinement. Officials have decided to ignore criteria set forth in both their policies and the U.S. Supreme courts rulings that pertain to prisoners rights while confined in solitary. The hearings are void of any substance that would consider his release.

38. Although classification policy provides that prisoners are allowed to make a verbal and written statement, it is never considered when Mr. Hope attends a hearing. Mr. Hope never goes before a SCC member that has the authority to order his release. Many times he has been told he will remain in solitary because he escaped in 1994. His current behavior or attitude are never considered. He is never told what ie expected of him because they have no intentions of releasing him from solitary confinement. The hearing is a sham and designed to make it look like they are affording Mr. Hope the little process he is due in accordance with previous court rulings. With SCC members like Bonnie Fiveash, Vanessa Jones and Lovelandy making statements about the physical shape Mr. Hope is in, it's clear they have no intentions of releasing Mr. Hope unless he is disabled or dead. His isolation is indefinite and the SCC hearings are a sham and perfunctory by their own admissions. Defendants do not afford Mr. Hope or other qualified persons or medical professionals any meaningful opportunity to weigh in on the continued appropriateness of his solitary confinement. The initial reason for placement in solitary continues to be the reason to continue his solitary confinement. Quite honestly, that can never change thus allowing defendants to continue to deny Mr. Hope any meaningful reviews of Due Process pertaining to beinghoused in solitary confinement now for over 23 years.

39. As recently as February 2017 Mr. Leonard Eschessa, the Deputy Director of Operations stated that he functions in a capacity to make a decision whether to release Mr. Hope from solitary, but would not review his file. Mr. Eschessa is responsible for ensuring that classification policies are followed to ensure prisoners are afforded their Due Process. He was made aware of the physical and mental health issues Mr. Hope has from being housed in solitary for decades. He has total disregard for the physical and mental health of Mr. Hope. He is aware of the mental and physical toll that prolonged isolation has on prisoners.

40. In January and February 2017 Joni White, Assistant Director of classifications was contacted by outside advocates after years of Mr. Hope

sending her letters asking questions about his continued isolation and her not responding. She stated that she would not allow Mr. Hope's release or make recommendations for his release. She stated that he escaped in 1994 and she doesn't want the responsibility that goes along with making that decision. It is Ms. White that has instructed all SCC members to remain Mr. Hope in solitary. That decision was made years in advance and continues to this day. Ms. White was made aware that Mr. Hope suffers from physical and mental health related issues due to decades of isolation. More importantly, Ms. White has been counseled on the effect that long-term isolation takes on the brain and continues to have total disregard for Mr. Hope's mental welfare.

41. Defendants are aware that Mr. Hope is being deprived of his basic human needs and physical health, enviromental stimulation, social interaction and dignity on account of long-term isolation. Instead, they extend it. Mr. Hope has spent more time in solitary confinement that he was alive prior to coming to prison.

42. In December 2005 the Security Precautions Desginator (SPD) committee reviewed and removed the "Escape risk" designator from Mr. Hope's file. this committee reviews the same classification file the SCC does to determine if the SPD should be removed or if the prisoner is still an escape risk. They determined he was not an escape risk and removed the SPD (ES) to indicate such. In April 2007 SCC member Steve Rogers reviewed that same file and determined he wasn't and escape risk and ordered his release only to have that hearing record removed from the file. Again in January 2010 Mr. Rogers ordered his release only to have it overruled in violation of classification policies. It's apparent Ms. White and Ms. Enloe have been working in conjunction to deny Mr. Hope any meaningful reviews or the Due Process afforded him from the United States Constitution.

43. Mr. Hope's continued confinement in solitary confinement has far reaching consequences and places a stigma on him. Pursuant to Parole rules, an offender housed in solitary confinement is ineligible to see a parole commissioner. That means he is never reviewed by a board member, only his file is reviewed. The fact Mr. Hope hasn't had a disciplinary case in six (6) years, is at the highest time-earning class, is at Level 1 security detention status and has completed over 13 correspondence courses relating to cognitive intervention in never considered by the parole board. Mr. hope's custody is the primary focus because

it determines how much trust they give a person they are considering for parole. If a prisoner is housed in solitary confinement it demonstrates to the parole board that he cannot be trusted around staff or other prisoners without being handcuffed and escorted. This drastically reduces the chances of Mr. Hope ever getting a favorable parole review. As parole board members have stated, "If he cannot be trusted around staff and other offenders, why would we release him to society?" Mr. Hope has a liberty interest in remaining free of solitary confinement, as long as he remains there he is ineligible to be seen by a parole commissioner or be given a favorable review for parole.

44. The appeal process for the SCC decisions/hearings is for the prisoner to file a grievance. The grievance is "investigated" by the unit warden. The unit warden cannot overrule a SCC decision and doesn't get a vote in the SCC hearing. It is meaningless for a prisoner to appeal their SCC decision and amounts to no appeal at all. In fact on a number of the grievances on the SCC hearing, their response was to write the SCC member; the same SCC member that he was grieving. Some of their responses merely tell him when his next review will be.

45. Mr. Hope is being retaliated against for exercising his constitutional right to file grievances and seek redress for actions he feels are unfair as well as unconstitutional. The weekly cell moves are without penological interest and clearly for harassment and retaliatory purposes. They interefere with Mr. Hope's ability to sleep, concentrate on reading and push him into a state of depression. The unjustified confiscation of Mr. Hope's typewriter (property) without compersation is an outright theft. When the typewriter was what was being used to file the grievances it becomes obvious the motive for the confiscation.

46. Mr. Hope suffers from anxiety and insomnia in part due to the weekly moves to unsanitary cells and having to adjust weekly to new "neighbors" and the different voices and noises he hears in that cell and around him. Both Warden Harris and Major Rehse have contributed to these physical and psychological malidies due to the inhumane treatment and conditions they subject him to and denying him basic human needs.

47. Each of the Defendants are aware of the harmful effects of long-term isolation and the toll it takes on the human body and brain. Each of the Defendants in one capacity or another work together to ensure Mr. Hope continues

to be subjected to these inhumane conditions and have done so for a prolonged period of time.

## PLAINTIFF'S DECLARATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, signed this __13th__ day of June, 2018.

*Dennis Wayne Hope*
Dennis Wayne Hope TDCJ # 579097
Polunsky Unit
3872 FM 350 South
Livingston, Texas 77351

## CERTIFICATE OF SERVICE

I Dennis Wayne Hope, Plaintiff Pro Se, hereby certify that a true and correct copy of the AMENDED COMPLAINT has been sent to AMY L. PRASAD, Assistant Attorney General for the State of Texas at Office of Ken Paxton, Attorney General of Texas P.O. Box 12548 Austin, Texas 78711-2548 via U.S. mail first class postage prepaid on this __13th__ day of June, 2018.

*Dennis Wayne Hope*
Dennis Wayne Hope TDCJ # 579097
Polunsky Unit
3872 FM 350 South
Livingston, Texas
                77351

June 13, 2018



Mr. David O'Toole, Clerk
U.S. District Court for the Eastern District of Texas
104 North Third Street
Lufkin, Texas 75901

Re: DENNIS WAYNE HOPE vs. TODD HARRIS et.al. Cause No. : 9:18cv27

Dear Mr. O'Toole:

Enclosed please find two (2) copies of Plaintiff's **AMENDED COMPLAINT** in the above-styled cause. Please file them with the court at your earliest convenience.

Thank you for your time and attention to this matter.

Respectfully,

Dennis Hope 579097
Polunsky Unit
3872 FM 350 South
Livingston, Texas 77351



DENNIS W. HOPE 579097
POLUNSKY UNIT
3872 FM 350, SOUTH
LIVINGSTON, TEXAS 77351



CLERK, U.S. DISTRICT COURT
RECEIVED
JUN 18 2018
EASTERN DIST. OF TEXAS
LUFKIN, TEXAS

David O'Toole, Clerk
United States District Court
Eastern District of Texas
104 North Third Street
Lufkin, Texas 75901