IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| DENNIS WAYNE HOPE | § | |
| V. | § | Civil No. : 9:18-CV-00027 |
| TODD HARRIS, et al. | § | |

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS AMENDED COMPLAINT

1.
STATEMENT OF THE CASE

Plaintiff Dennis Wayne Hope, has been confined to Solitary Confinement ("Ad. Seg.") under highly restrictive conditions for over 23 years. Plaintiff contends he is given a "sham" review and denied any meaningful review with regard to his placement in indefinite isolation, hence violative of Due Process. He further alleges the unsanitary and highly restrictive living conditions in conjunction with the 23 years of being subjected to it violate the 8th Amendment and is cruel and unusual punishment. He is being retaliated against for seeking redress via grievances for these unconstitutional acts. Both his physical and mental health have deteriorated due to the decades of this type confinement and treatment.

2.
PLAINTIFF HAS A LIBERTY INTEREST IN RELEASE FROM
23 YEARS OF CONFINEMENT IN "Ad. Seg." UNDER HIGHLY
RESTRICTIVE CONDITIONS AND IN NOT SPENDING THE REST
OF HIS LIFE IN SOLITARY CONFINEMENT.

Misreading Sandin v. Conner, 515 U.S. 472 (1995), defendants deny that plaintiff has a liberty interest in release from solitary confinement and assert this court lacks jurisdiction to adjudicate this case. To the contrary, as the Third Circuit recognized in Shoats v. Horn, 213 F.3d 140 (3rd Cir. 2000), it requires a case-by-case inquiry into whether plaintiff is asserting atypical and significant hardships. "Eight years in administrative custody, with no prospect of immediate release in the near future, is 'atypical' in relation to the ordinary incidents of prison life". Shoats v. Horn 213 F.3d 140, 144 (3rd Cir. 2000), see also Laue v. Johnson, 117 F.App'x 365, 366. (5th Cir. 2004) ("We will assume arguendo that Laue's eight years of confinement in administrative

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

MAR 19 2019

BY
DEPUTY_____

1.

segregation constitutes an 'atypical and significant hardship' on the inmate in relation to the ordinary incidents of prison life". In the instant case, Plaintiff Hope has spent 23 years in solitary confinement, with no end in sight.

Since the U.S. Supreme Court's decision in Wilkinson v. Austin, 125 S. Ct. 2384 (2005), the 5th circuit has stated, "when a prisoner demonstrates extraordinary circumstances" or in other words, an "atypical and significant hardship", he may "maintain a due process challenge to a change in his custodial classification." Hernadez v. Velasquez 522 F.3d 556, 562 (5th Cir. 2008) at 562. See also Tate v. Starks 444 F. App'x 720, 723-24 (5th Cir. 2011) (noting that extremely restrictive conditions constitute a "crucial exception to the general rule that a prisoner has no liberty interest in his classification"). Plaintiff Hope has endured almost three (3) times the amount of time courts have said trigger a Liberty interest. Plaintiff Hope has demostrated a Liberty interest and this court has jurisdiction to adjudicate this case.

Plaintiff Hope's confinement is atypical not only in duration but also in the degree of the hardhsip. In the general population, inmates work and socialize. They live in dormitories, have cell mates. They have educational and religious programs they can participate in. They have contact visits and human contacts with family and others. They are not strip searched at least two (2) times a day. They do not eat in their cell. They are not handcuffed and escorted everywhere they go. They have privacy when consulting medical and mental health personnel. They have access to a telephone and television daily. The list is extensive when comparing the hardships faced in solitary versus those of inmates in general population.

Two aspects of the complaint are not separable. The conditions of confinement and the over 23 years of being subjected to them violate the Eighth Amendment. The complaint described the conditions to show why over 23 years of that treatment would be inhumane. How Plaintiff is denied basic human needs and for how long he has suffered this deprivation.

3.
PLAINTIFF HOPE HAS A RIGHT TO DUE PROCESS

Having established a protectable liberty interest under the U.S. Constitution Plaintiff can maintain a due process challenge to his custodial classification. Since the U.S. Supreme Court's decision in Wilkinson, the 5th circuit has stated that, "when a prisoner demonstrates extraordinary circumstances" or in other words, an "atypical and significant hardship", he may "maintain a due process challenge to a change in his custodial classification." Hernandez v. Velasquez 522 F.3d 556, 562 (5th Cir. 2008) at 562.

4.
## PLAINTIFF HOPE IS DENIED ADEQUATE PROCEDURE AND MEANINGFUL REVIEW IN HIS CUSTODIAL CLASSIFICATION.

Defendants make the alternative argument that even if plaintiff Hope has a liberty interest, he has received adequate due process as a result of his appearences before the State Classification Committee (SCC) every 180 days. Plaintiff counters that the "review" conducted by the SCC is nothing more than a sham proceedings in which SCC members ignored the merits of plaintiffs' case and instead devoted their time discussing matters unrelated to classification or plaintiff. On paper, the SCC fills out a review form. In reality, there is no review at all. For the past 23 years each SCC has continued the segregation on the basis of the original ground for segregation with absolutely no rational discussion or deliberation on the substance of the decision. Over the last eight (8) years Plaintiff has not gone before a SCC that has the authority to order his release from Ad. Seg. Plaintiff Hope isn't seen by any decision-maker that can order his release, but instead he's informed he'll be seen again in 180 days. The SCC has 23 years worth of denials on Plaintiff that occur every 180 days and accrue as the months go along. Plaintiff Hope is never told what he must do in order to be released from Ad. Seg. because defendants have no intentions of releasing him. Absent court and judicial intervention this will continue to be the case.

5.
## PLAINTIFF HOPE HAS A PLAUSIBLE EIGHTH AMENDMENT CLAIM.

Plaintiff Hope has alleged denial of basic human needs; sleep, social contact, exercise and enviromental stimulation. Exercise and sleep have been expressly recognized by jurisprudence as basic needs, Wilson v. Seiter, 501 U.S. 294, 304, 111 S. Ct. 2321 (1991). Additionally, plaintiff emphasizes that the conditions of Ad. Seg. must be considered both cumulatively and durationally in determining whether a serious deprivation has occurred, and that a reasonable factfinder could conclude that the combination of conditions for such an extraordinary long time in lockdown deprives the plaintiff of, at the very least basic needs of exercise and sleep.

"As early as 1890, the Supreme Court recognized that, largely because of the risks of severe psychological harm that flow from the deprivations of social contact and other forms of enviromental stimulation, the matter of solitary confinement is not...a mere unimportant regulation as to the safe-keeping of

3.

the prisoner. but is rather itself an infamous punishment." In re Medley, 134 U.S. 160, 167, 169, 10 S. Ct. 384 (1890). Other courts have recognized the medical and pyschological literature concerning the ill effects of segregation and isolation on human beings.. See Davenport v. De Roberts, 844 F. 2d 1310, 1316 (7th Cir. 1988)(Posner, J.)(noting that "there is plenty medical and psychological literature concerning the ill effects of solitary confinement (of which segregation is a variant)"; Madrid v. Gomez, 889 F. Supp. 1146, 1230 (N.D. Cal. 1995) (Social science and clinical literature have consistently reported that when human beings are subjected to social isolation and reduced enviromental stimulation, they may deteriorate mentally and in some cases develop psychiatric disturbances").

Defendants are aware of the harmful effects of isolation and have attended seminars and counseling in inform them of the psychological damage and suicidal tendencies that can be brought on as a result of extended periods and exposure to isolation. Defendants use this form of housing for an extended period (23 years) to mentally and psychologically torture plaintiff. On many different occasions they have been informed of the physical and mental problems plaintiff Hope suffers due to extreme isolation for decades. They refuse to take corrective action and remain deliberately indifferent to his serious medical and mental needs. Defendants are deliberately indifferent to plaintiff Hope's serious medical and mental needs as evidenced by their keeping him in isolation for over 23 years in a cell of 60 square feet, 23 hours a day, 7 days a week with no social contact and depriving him of basic human needs all the while knowing this form of treatment drives men insane.

6.
EACH DEFENDANT HAS PERSONAL INVOLVEMENT

Each defendant in this suit has singled plaintiff Hope out with regard to his treatment. Both defendants Harris and Rehse ordered Hope moved weekly to a different cell. At one point Hope was told by Major Rehse, "everytime I see you you're going to get moved". Both Harris and Rehse made and enforced the unit policy that Ad. Seg. inmates must have an officer holding on to them any time they are in handcuffs and out of their cell. Even when medical and mental health staff asked for one on one consultation the officers would not leave the room. Both Harris and Rehse refuse to allow plaintiff Hope to be handcuffed in front, they personally make that decision anytime it is requested by medical staff. Major Rehse personally saw the black mold on the walls in Hope's cell and refused to remove him and assign him to another cell or have

the cell disinfected. Both Harris and Rehse have sat in on SCC hearings as evidenced by their signatures on the SCC hearing record. Warden Harris is the senior warden and answers grievances which is how SCC decisions are appealed for inmates. Both Harris and Rehse are responsible for the overall living conditions and treatment of Hope while he is on the Polunsky unit.

All SCC mebers have personally conducted hearings on Hope and denied him meaningful reviews, are aware of the physical and mental problems Hope has due to decades of isolation and continue to contribute to the depression and unconstitutional treatment of plaintiff Hope.

Defendant Joni White instructed all SCC members to remain Hope in Ad. Seg. thereby nullifying any process any hearing was designed to afford Plaintiff Hope. In phone conversations with advocates of Hope's she admitted she has no intentions of releasing Hope before her retirement.

Each defendant not only is aware of the treatment of Plaintiff Hope, but actively contribute to it. Each are aware of the psychological harm they are imposing on Hope and continue to do so without any regard for his physical or mental health.

### 7.
### HOPE HAS A PLAUSIBLE RETALIATION CLAIM

Plaintiff Hope continues to file grievances concerning his conditions of confinement. those complaints deal with unsanitary cells, living area and showers. Hope has been moved into 263 cells in the last five (5) years. The previous five (5) years he was moved eight (8) times. Major Rehse and Warden Harris are the ones who ordered the moves as evidenced by the move log. The confiscation of the typewriter was done so to deprive Hope of personal property and impede his ability to file grievances and send letters to outside officials seeking redress of the actions and treatment he was being subjected to.

### 8.
### HOPE HAS STANDING FOR INJUNCTIVE RELIEF

"A party seeking preliminary injunction must show: (1) a likelihood of success on the merits;(2) that it will suffer irreparable harm if the injunction is denied;(3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." Kos Pharms., Inc. v. Andrx Corp., 369 F. 3d 700, 708 (3d Cir.2004)(citing Allegheny Energy, Inc. v. DQE, Inc., 171 F.3d 153, 158(3d Cir. 1999)). Here, all of these factors favor a preliminary injunciton.

The Court's first inquiry is whether Plaintiff Hope has a "reasonable probability of success on the merits." Allegheny Energy, Inc., 171 F.3d at 158. To meet this burden, the moving party must present "sufficient evidence to satisfy the essential elements of the underlying cause of action." Stilp v. Contino, 629 F. Supp. 2d 449, 457 (M.D. Pa.2001). "The mere possibility that the claim might be defeated does not preclude a finding of probable success." Id. Plaintiff Hope is likely to succeed on the merits of his Eighth Amendment claim under 42 U.S.C. § 1983, as his over two (2) decades of incarceration in solitary confinement constitutes cruel and unusual punishment.

Conditions of prisoenr confinement are subject to Eighth Amendment scrutiny. Farmer v. Brennan, 511 U.S. 825, 832-34 (1994). Pursuant to the Eighth Amendment's prohibition on cruel and unusual punishment, prison officials must ensure inmates are held in "humane" conditions. Id. at 832 The Supreme Court has set forth a two-pronged inquiry. Id. at 834. First, the conditions to which a prisoner is subjected must be objectively "serious," -- a denial of "the minimal civilized measure of life's necessities" or posing a "substantial risk of serious harm." Id. at 834. Second, the prison official must be subjectively culpable -- showing "'deliberate indifference to inmate health or safety.'" Id.

To satisfy the objective component, a plaintiff must show a deprivation of a single, identifiable human need, such as health, safety, or exercise. Wilson v. Seiter, 501 U.S. 294, 304 (1991). A court may also consider a combination of conditions if the combination produces a "mutually reinforcing effect" resulting in a deprivation of a single, identifiable human need. Id. The Eighth Amendment also protects against future harm, where conditions "pose an unreasonable risk of serious damage to [the prisoner's] future health." Helling v. McKinney, 509 U.S. 25, 35 (1993).

The subjective component requires prison officials be dleiberately indifferent to the identified deprivations or risks. Farmer, 511 U.S. at 834. A defendant is deliberately indifferent when he or she "knows of and disregards" a deprivation or "an excessive risk to inmate health or safety." Id. at 837. To disregard a deprivation or risk means to "fail[] to take reasonable measures to abate it." Id at 847.

Prison officials cannot "choose to remain deliberately indifferent to an excessive or substantial or serious risk of harm to inmates." Coble v. Damiter, Civ. No. 3:11-CV-1276, 2012 WL 3231261, *8-*9 (M.D. Pa. June 27,2012). Accordingly, courts properly infer deliberate indifference when the plaintiff proves the risk

or deprivation was "obvious." Farmer, 511 U.S. at 842.

"The length of confinement [in isolation] cannot be ignored in deciding whether confinement meets constitutional standards." Hutto v. Finney, 437 U.S. 678, 686 (1978); Nami v. Fauver, 82 F.3d 63, 67 (3rd Cir. 1996) (considerations relevant to the Eighth Amendment test "include the length of confinement, the amount of time prisoenrs must spend in their cells each day, sanitation, lighting, bedding, ventilation, noise, education and rehabilitation programs, opportunites for activities outside of cells,..."); Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992) (superseded by statute on other grounds)("The duration and conditions of segregated confinement cannot be ignored in deciding whether such confinement meets constitutional standards."); Peterkin v. Jeffes, 855 F.2d 1021, 1025 (3d Cir. 1988)("objective factors which a court must examine in prison conditions cases include basic human needs such as ...length of confinement, and out-of-cell time."). Solitary confinement in any duration-- and particularly in an extreme duration such as this--deprives inmates of the basic human needs of social interaction, enviromental stimulation, mental health, sleep, and exercise. Plaintiff Hope has endured these deprivations for over twenty-three (23) years. Plaintiff Hope, therefore, satisfies the objective component of an Eighth Amendment claim. See Wilkerson v. Stalder, 639 F. Supp.2d 654, 679 (M.D. La.2007).

Defendants have deprived Plaintiff Hope of all human interaction and enviromental stimulation for over two (2) decades. As set forth above, Hope spends 23 hours a day in his cell, alone. He eats all his meals alone. He is not permitted to touch any visitors, ever; and aside from strip searches and other incidental contact with his captors, he has not touched another human for over 23 years. He showers alone, recreates alone, is not permitted to participate in educational or religious programs or have access to a television.

Social interaction and environmental stimulation are basic human needs. Wilkerson, 639 F. Supp. 2d at 677-678, Ruiz v. Johnson, 37 F. Supp.2d 855, 914-15 (S.D. Tex. 1999)rev'd on other grounds, 243 F.3d 941 (5th Cir. 2001), adhered to on remand 154. F. Supp 2d 975 (S.D. Tex 2001), Shoatz v. Wetzel, No. 2:13-cv-0657, 2016 WL 595337 at *8(W.D. Pa.2016)(summary Judment denied after finding plaintiff produced sufficient evidence that "over 22 years in consecutive solitary confinement constitutes a sufficiently serious deprivation of at least one basic human need, including but not limited to sleep, exercise, social contact and environmental stimulation.")

The almost total limitation on human interaction imposed on Plaintiff Hope over several decades is a deprivation of what it means to be human. As the Wilkerson court stated:"The cumulative effect of over 28 years of confinement in lockdown [in solitary confinement] constitutes a sufficiently serious deprivation of at least one basic human need, including but not limited to sleep, exercise, social contact and environmental stimulation. It is obvious that being housed in isolation in a tiny cell for 23 hours a day for over three decades results in serious deprivations of basic human needs." Wilkerson, 639 F. Supp.2d at 679.

Just as in Wilkerson, Plaintiff Hope is held in isolation "in a tiny cell for 23-24 hours per day"for over two decades. As in Wilkerson, he has, by that very fact, "obvious[ly]" been deprived of basic human needs. Id.

Plaintiff Hope's pervasive isolation has lead to cognitive impairment, chronic depression, emotional pain and suffering, and other pyschological harms. Various courts have found the Eighth Amendment protects against segregation that causes a serious deprivation of mental health over a prolonged period. Ruiz v. Johnson, 37 F. Supp.2d 855, 914 (S.D. Tex. 1999)("extreme levels of pyschological deprivations" cause"pain and suffering," (reversed on other grounds)); Wilkerson supra, Shoats supra, AShker v. Brown, No. 4:09-cv-5796, Dkt. No. 191, Order Denying Mot. to Dismiss, *9 (N.D. Cal. Apr.9,2013)("Plaintiffs' asserted injuries -- the symptoms of which include 'chronic insominia,' 'severe concentration and memory problems," 'anxiety,' and other ailments- are sufficient to satisfy the objective component of their Eighth Amendment claim, considering the length of Plaintiffs' exposure tothese conditions.").

Quite understandably, Plaintiff Hope suffers from in creasing hopelessness (no pun intended), depression and anxiety, declining short-term memory and the inability to even focus on a task for a few minutes. All of these symptoms, suffered for over two decades in isolation, demonstrate a serious deprivation of mental health- anestablished identifiable human need.

Plaintiff Hope has increasingly crippling insominia as a result of his isolation. At times set aside for prisoenrs to sleep his cell light is repeatedly turned on for security checks or a flashlight is shined in his face every 30 minutes. He wakes frequently and has difficulty falling back asleep, sleeping at most four to five hours every 24 hours. "[S]leep undoubtedly counts as one of life's basic needs." Harper v. Showers, 174 F.3d 716, 720 (5th Cir. 1999).

Deprivation of sleep, coupled with other deprivations to which hi is subjected, constitute a deprivation of an identifiable human need.

Deliberate indifference can be inferred when the risk of harm is obvious. Farmer. 511 U.S. at 842. As noted by the court in Wilkerson, the risk of 36 years in solitary confinement are so obvious no reasonable person can claim to be unaware of them. Wikerson, 639 F. Supp.2d at 679. Accordingly, this court can and should infer that Defendants know the risks posed by prolonged solitary confinement.

The ruinious effects of long term isolation are not new or unknown concepts, nor are they debated. The United Nations has called for all countries to ban solitary confinement in excess of 15 days, saying "the severe mental pain or suffering solitary confinement may cause, it can amount to torture or cruel, inhuman or degrading treatment or punishment."

More specifically, piblic policy is against long term solitary confinemnt without penological justification is clear. Justice Kennedy recently recognized the "human toll wrought by extended terms of solitary confinement," and that it may be time for the courts to find "workable alternative systems" for long term solitary confinement. Davis v. Ayala, 135 S. Ct. 2187, 2208-10 (2015) (Kennedy, J. concurring). He noted, succinctly: "[y]ears on end of near-total isolation exact a terrible price." Id. Plaintiff Hope has paid that price for decades.

Statements from the correctional community itself also demonstrate public policy is strongly in favor of Plaintiff Hope's release from solitary confinement. The American Correctional Association, which defendants are a member of recently released a statement indicating the need to reduce, if not eliminate, long term solitary confinement. Many States have already acted on this advice.

Plaintiff Hope is exceptionally resilient, but the excessive period he has endured in solitary confinement has broken him down to the point that continued isolation will lead to irreparable mental harm. Hope's advancing age makes him even more susceptible to irreversible mental decline due to his isolation.

9.
PLAINTIFF HOPE OBJECTS TO DISMISSING DEFENDANT
TODD HARRIS FROM THIS SUIT.

Defendant Todd Harris was the warden at all times during Plaintiff Hope's complaint. He remained warden some ten (10) months after Plaintiff Hope filed his complaint and refused to take corrective action. Defendant Harris is liable for his actions as they took place during the period he maintained custody and

control over Plaintiff Hope on the Polunsky unit. More importantly, Defendant Harris made many of the decisions regarding the treatment of Plaintiff Hope.

## 10.
## PRAYER

For the above stated reasons, Plaintiff Hope prays that this court will deny defendants Motion to Dismiss Plaintiff's Amended Complaint.

*Dennis Wayne Hope 579097*
Dennis Wayne Hope TDCJ # 579097
Polunsky Unit
3872 FM 350 South
Livingston, Texas 77351

## CERTIFICATE OF SERVICE

I Dennis Wayne Hope, Plaintiff Pro Se, hereby certify that a true and correct copy of the "Plaintiffs' Opposition to Defendants' Motion to Dismiss Amended Complaint" has been sent to Amy L. Prasad, Assistant Attorney General for the State of Texas 78711-2548 via U.S. Mail first class postage prepaid on this ___19___ day of March, 2019.

*Dennis Wayne Hope 579097*
Dennis Wayne Hope TDCJ # 579097
Polunsky Unit
3872 FM 350 South
Livingston, Texas 77351

10.

March 19, 2019

Mr. David O'Toole, Clerk
U.S. District Court of the Eastern District of Texas
104 North Third Street
Lufkin, Texas 75901

Re: DENNIS WAYNE HOPE vs. TODD HARRIS ET AL.    Cause No.: 9:18cv27

Dear Mr. O'Toole:

Enclosed please find two (2) copies of Plaintiff's Opposition to Defendants' Motion to Dismiss Amended Complaint. A copy has been forwarded to Amy L. Prasad, Assistant Attorney General of Texas on this same day. Please file them with the court at your earliest convenience.

Thank you in advance for your time and attention to this matter.

Respectfully Submitted,

Dennis Wayne Hope  579097
Polunsky Unit
3872 FM 350 South
Livingston, Texas 77351

Vernia Hope S79097
Pulmonary Unit
3872 FM 350 South
Livingston, Texas
77351

Mr. David O'Toole, Clerk
U.S. District Court of the Eastern District of Texas
104 North Third Street
Lufkin, Texas
75901



NORTH TEXAS PDC
DALLAS TX 750
SAT 16 MAR 2019
AFSN5 PM 31:97:25