IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| DENNIS WAYNE HOPE | § | |
| VS. | § | CIVIL ACTION NO. 9:18cv27 |
| TODD HARRIS, ET AL. | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Dennis Wayne Hope, an inmate confined at the Polunsky Unit of the Texas Department of Criminal Justice, Correctional Institutions Division, proceeding *pro se* and *in forma pauperis*, brings this action pursuant to 42 U.S.C. § 1983.

The above-styled action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636 and the Local Rules for the Assignment of Duties to the United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case.

Discussion

Plaintiff, an inmate confined in the Security Housing Unit ("SHU") at the Polunsky Unit, has submitted an extensive list of complaints about the conditions of his confinement. Plaintiff claims he has been held in Administrative Segregation continuously for the last twenty-three years and has been told he cannot be transferred from this environment because he has an escape on his record. Plaintiff complains he is confined to his cell for twenty-three hours per day for 191 days a year and twenty-four hours per day on the remaining 174 days of the year. However, plaintiff later states he is allowed out of his cell two hours per day for recreation five days per week.

Plaintiff claims he is fed in his cell through a tray slot opening in the cell door and is fed on unsanitary food trays and, as a result, he claims he has suffered incidents of food poisoning. Additionally, plaintiff complains that the meals are cold even though they are delivered in a "Hot Cart." Plaintiff alleges the food portions given to inmates in Administrative Segregation are smaller than the portions given to inmates and General Population, and they are not provided many of the condiments provided to General Population inmates such as mustard and syrup.

Next, plaintiff complains he is required to submit to a strip search prior to being removed from his cell for any reason. He claims he is strip searched, on average, four times per day. Plaintiff states he is required to squat down to place his hands through the tray slot to be hand-cuffed, straining his shoulders and rotator cuffs. However, according to plaintiff, defendants Harris, the unit warden, and Rehse, the unit major, refuse to allow him to be handcuffed in the front of his body. Plaintiff claims the defendants are deliberately indifferent to his medical needs.

Plaintiff also complains he is limited in the amount and kind of property he can possess in the SHU. He claims this reduces the amount of reading material and other personal items he may possess, and the amount of property is smaller than inmates in General Population are allowed. Plaintiff complains he cannot possess a razor, pencil sharpener or clothing that has elastic in it.

Next, plaintiff complains that due to being housed alone in his administrative segregation cell, he is denied almost all human contact, and his only human contact is with officers and medical staff. Plaintiff claims he is denied contact visitation with his family and has to visit through a plexiglass partition and talk over a phone.

Plaintiff claims he also is denied access to a television, and is only permitted to use a telephone in an emergency situation after approval by unit administration. Plaintiff complains he is only permitted to call persons on his approved visitor list which consists of ten people instead of the twenty people allowed for prisoners in General Population.

Plaintiff complains that his housing area is loud all hours of the day due to both inmates and officers. Plaintiff claims this deprives him of "quality sleep and only allows him to sleep fitfully several hours at a time." Plaintiff claims this adds to his anxiety and depression.

Plaintiff claims he has been indirectly exposed to the use of chemical agents at least ten times in the last two years through no fault of his own. Plaintiff claims prison officials are aggressive and careless with their use of chemical agents and use them in excessive amounts in unwarranted situations with no regard to the other prisoners they expose to these gases.

Next, plaintiff complains the SHU is locked down a minimum of four times a year compared to two lock-downs per year in General Population. In addition to the lock-downs, plaintiff claims cells are randomly searched and inspected every other day. While on lock-down, plaintiff complains that he is given a "Johnny" consisting of two sandwiches in a sack for each meal, and one of the sandwiches is peanut butter. Plaintiff complains the sack lunches have less calories than the food served on trays and has subjected him to weight loss and constipation. Plaintiff claims that during the lock-downs the walkways are not mopped and showers are not cleaned. As a result, plaintiff claims the showers have mold and mildew on the walls.

Plaintiff also complains his access to legal materials is reduced due to his housing location. As a result, plaintiff claims research takes him longer than if he were allowed to go to the law library. Additionally, plaintiff claims he is denied access to other prisoners knowledgeable in the law.

Next, plaintiff claims that following an incident in 2012 in which a ten inch screwdriver was found in his cell or property, he has been moved to a different cell each week to harass him and retaliate against him. Plaintiff claims both Warden Harris and Major Rehse order his weekly moves as a form of harassment and without penological reason.

Plaintiff claims that when he moves into a new cell it is not disinfected or otherwise cleaned, and he is not provided with cleaning supplies. On some occasions, plaintiff claims he was moved into a cell with no lights. On December 21, 2017, plaintiff claims he was moved into a cell with mold on the back wall and floor. He claims he remained in that cell for thirteen days and began coughing. Plaintiff claims that it took outside advocates contacting the warden to get him moved from the cell. Plaintiff claims defendant Rehse saw the mold on the back wall of his cell on December 26, 2017, but it was only after Assistant Warden Jefferson sent someone to inspect the cell and saw the mold growth that she ordered him removed from the cell.

Plaintiff complains that, due to his housing classification requiring an escort everywhere he goes, he has no privacy when consulting with medical or mental health professionals. Plaintiff claims the lack of escort officers is not uncommon resulting in delayed or cancelled appointments

and medical or mental health personnel frequently making cell-side visits where other prisoners can listen. Plaintiff also claims he has reported to mental health professionals that he deals with bouts of anxiety, depression, and visual and auditory hallucinations but he has been denied treatment for these conditions.

Plaintiff states the Administrative Segregation Committee conducts a hearing concerning his confinement at thirty-day intervals, but he is not allowed to attend. Plaintiff complains that the committee has no authority to release him and the reviews are a sham and meaningless because the State Classification Committee has already decided he will remain in the SHU for the next 180 days. Plaintiff states he is reviewed by the State Classification Committee every 180 days to determine whether he will remain in the SHU or be released to general population.

On June 24, 2016, plaintiff claims he was reviewed by SCC member Melissa Benet. Plaintiff made both an oral and written statement at the hearing. After she looked over his file, plaintiff claims Benet told him she saw no reason not to release him to a transitional program. However, he later received his hearing record in the mail, and it indicated he was to remain in the SHU without further explanation. At a subsequent hearing on December 3, 2016, plaintiff claims he asked Benet why he was not released to the transitional program like she told him in June of 2016. Plaintiff states Benet told him "you are high profile, I don't have the authority to release you." Thus, plaintiff claims Benet's review was perfunctory and a sham used to provide him due process. Plaintiff claims he saw another SCC member, Ms. Enlow, on June 8, 2017 and when he requested release he was informed "that's not my decision." Plaintiff claims he was later reviewed by SCC member defendant Bonnie Fiveash. Plaintiff claims Fiveash told him "you're still in good shape I can't release you." When asked if it was ever her call to make, plaintiff claims Fiveash told him "that would be the Director's call." Plaintiff complains that he has not been told what he must do to be released to General Population. Plaintiff claims defendant Eschessa, the Deputy Director of Operations has the capacity to release him to General Population, but Eschessa would not review his file. Plaintiff also claims defendant White, Assistant Director of Classifications, was contacted by outside advocates

and stated she would not allow his release or make recommendations for his release. White stated that because plaintiff escaped in 1994 she does not want the responsibility that goes along with making that decision. Plaintiff claims White has instructed all SCC members that plaintiff is to remain in the SHU.

Plaintiff claims that in December, 2005, the Security Precautions Designator Committee reviewed and removed the escape risk designator from his file. Accord to plaintiff, they determined he was not an escape risk. However, he remains confined in the SHU and has been denied any meaningful review. Further, plaintiff claims he is not eligible to see a parole commissioner for release on parole due to his confinement in Level 1 Security Detention status.

Plaintiff claims the appeal process for SCC decisions is for an inmate to file a grievance. However, it is meaningless for a prisoner to appeal a decision of the State Classification Committee. Plaintiff claims he is being retaliated against for filing grievances.

Finally, plaintiff complains that the confiscation of his typewriter without compensation is theft. Plaintiff claims the typewriter was being used to file the grievances it "becomes obvious the motive for the confiscation."

## The Defendants' Motion to Dismiss

Pending before the court is a motion to dismiss plaintiff's amended complaint filed by the defendants (docket entry no. 20). The defendants contend plaintiff's claims should be dismissed for lack of subject-matter jurisdiction based on the Eleventh Amendment. Additionally, the defendants move for dismissal of plaintiff's complaint for failure to state a claim upon which relief may be granted.

## Standard of Review

An in forma pauperis proceeding may be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) if it: (1) is frivolous or malicious, (2) fails to state a claim upon which relief may be granted or (3) seeks monetary relief from a defendant who is immune from such relief.

A complaint, containing as it does both factual allegations and legal conclusions, is frivolous where it lacks an arguable basis either in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Geiger v. Jowers,* 404 F.3d 371, 373 (5th Cir. 2005); *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997). A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory. *See Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997).

In addition to the legal basis of the complaint, Section 1915 empowers the court to pierce the veil of the complainant's factual allegations if they are clearly baseless. *Denton v. Hernandez,* 504 U.S. 25, 32 (1992); *Ancar v. Sara Plasma, Inc.,* 964 F.2d 465 (5th Cir. 1992). A complaint lacks an arguable basis in fact if, after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless*. Denton*, 504 U.S. at 32.

In *Denton v. Hernandez*, the Supreme Court "declined the invitation to reduce the clearly baseless inquiry to a monolithic standard." *Denton*, 504 U.S. at 33. Examples of complaints within the clearly baseless inquiry are those which describe fanciful, fantastic, or delusional scenarios. A complaint is factually frivolous if the facts alleged rise to the level of the irrational or wholly incredible. Pleaded facts which are merely improbable or strange, however, are not clearly baseless for Section 1915(d) purposes. *Id.*

*Failure to State a Claim*

Under Rule 8 of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 12(b)(6) authorizes the court to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).

A complaint fails to state a claim upon which relief may be granted if the factual allegations are not sufficient to raise a right to relief above the speculative level. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). Dismissal for failure to state a claim is appropriate when the plaintiff has failed to plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S.

662, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. 544, 570). Plaintiffs must state enough facts to "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. 544, 570.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. At this stage, a court "must accept all well-pleaded facts alleged in the complaint as true and must construe the allegations in the light that is most favorable to the plaintiff." *Cent. Laborers' Pension Fund v. Integrated Elec. Servs.,* 497 F. 3d 546, 550 (5th Cir. 2007). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "[R]egardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Taylor v. Books a Million, Inc.,* 296 F.3d 376, 378 (5th Cir. 2002) (internal quotations omitted).

Analysis

I.  *Elements of a Cause of Action under 42 U.S.C. § 1983*

Title 42 U.S.C. § 1983 authorizes a suit in equity, or other proper proceeding for redressing violations of the Constitution and federal law by those acting under color of state law. *See Nelson v. Campbell*, 541 U.S. 637, 643 (2004); *Conn v. Gabbert*, 526 U.S. 286, 290 (1999). It provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured ....

42 U.S.C. § 1983.

II. *Eleventh Amendment Immunity*

The Eleventh Amendment provides that the State of Texas, as well as its agencies, are immune from liability. *Kentucky v. Graham,* 473 U.S. 159, 167, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). The Eleventh Amendment bars claims against a state brought pursuant to 42 U.S.C. § 1983. *Aguilar v. Texas Dept. of Criminal Justice,* 160 F.3d 1052, 1054 (5th Cir. 1998). In *Will v. Michigan*

*Department of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), the Supreme Court held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." The Supreme Court upheld the dismissal of the Michigan Department of State Police and its Director sued in his official capacity. *Id.* The Fifth Circuit has accordingly "held that the Eleventh Amendment bars recovering § 1983 money damages from TDCJ officers in their official capacity." *Oliver v. Scott,* 276 F.3d 736, 742 (5th Cir. 2002). However, "the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437, 124 S. Ct. 899, 157 L. Ed. 2d 855 (2004); *Aguillar*, 160 F. 3d at 1054.

The narrow exception to Eleventh Amendment immunity from suit, the *Ex parte Young* exception, "is based on the legal fiction that a sovereign state cannot act unconstitutionally[; t]hus, where a state actor enforces an unconstitutional law, he is stripped of his official clothing and becomes a private person subject to suit." *K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010). "In order to use the *Ex Parte Young* exception, a plaintiff must demonstrate that the state officer has 'some connection' with the enforcement of the disputed act." *Id.* In determining whether the doctrine of *Ex parte Young* avoids the bar to suit under the Eleventh Amendment, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. V. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002).

In his complaint, plaintiff alleges that defendants Harris and Rehse are responsible for ensuring that prisoners in the SHU are housed in sanitary conditions and not subjected to harassment, retaliation or cruel and unusual punishment. Plaintiff also alleges certain defendants failed to follow prison policy regarding the review of his classification status. Plaintiff, however, must first demonstrate he meets the three elements of Article III standing; (1) injury in fact; (2) causation; and (3) redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The redressability element of the test for standing requires that a favorable decision for the plaintiff will likely, not

merely speculatively, redress the plaintiff's injury. *Id.* Additionally, the court must gauge (1) the ability of the official to enforce the statue at issue under his statutory or constitutional power, and (2) the demonstrated willingness of the official to enforce the statute. *Okpalobi v. Foster*, 244 F.3d 405, 425-27 (5th Cir. 2001). Defendants Harris and Rehse are no longer the warden at the Polunsky Unit. Further, plaintiff's complaint reveals that the ability to address his complaints lies with the Director of the prison system based on plaintiff's history of violence and escape.[1] The defendants in this action do not have the ability to release plaintiff from confinement in the Special Housing Unit. Therefore, a favorable decision for plaintiff will not allow the defendants to address plaintiff's complained of injury. Accordingly, the defendants' motion to dismiss should be granted.

*III.    Due Process - Classification*

Plaintiff alleges his classification and continued confinement in administrative segregation violates his right to due process. Additionally, while plaintiff concedes he receives reviews by the Administrative Segregation Committee every thirty days and reviews by State Classification Committee members which he attends every 180 days, plaintiff complains the reviews are not meaningful because he has not been released from administrative segregation to general population.

It is well settled in the Fifth Circuit that an inmate has no protected interest in any particular custody or security classification, once incarcerated. *See Wilkerson v. Stalder*, 329 F.3d 431, 435-36 (5th Cir.), *cert. denied*, 124 S.Ct. 432 (2003); *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999); *Whitley v. Hunt*, 158 F.3d 882, 889 (5th Cir. 1998). The classification of prisoners is a matter within the discretion of prison officials. *McCord v. Maggio*, 910 F.2d 1248, 1250 (5th Cir. 1990). Therefore, absent an abuse of discretion, a federal court will not interfere with administrative determinations regarding custodial classification of an inmate. *Whitley*, 158 F.3d at 889. In

---

[1] The TDCJ Offender Information website reveals plaintiff is serving multiple cumulative sentences for five aggravated robberies with a deadly weapon, impersonating a public servant/security officer, and two separate escapes from custody. Further, plaintiff has seventy-five years' imprisonment remaining to satisfy his maximum sentence. *See* https://offender.tdcj.texas.gov/OffenderSearch/search.action. Additionally, plaintiff has federal convictions for carjacking, robbery, using a firearm during the commission of a crime of violence, and illegally possessing a firearm. *See United States v. Hope*, 102 F.3d 114 (5th Cir. 1996).

*Pichardo v. Kinker*, 73 F.3d 612 (5th Cir. 1996), the court stated that "absent extraordinary circumstances, administrative segregation as such, being an incident to the ordinary life as a prisoner, will never be a ground for a constitutional claim." *Id*. at 612-613; *see also Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement.").

Plaintiff admits he is receiving regular reviews by the defendants in this action. As set forth above, a review of plaintiff's complaint reveals that the ability to address his complaints regarding release from administrative segregation lies solely with the Director of the prison system. A review of plaintiff's federal criminal appeal provides some background for why the director may have retained sole authority regarding plaintiff's possible release to General Population. On November 26, 1994, plaintiff made his second escape from the Texas state prison system and later stole a car at knife point. *See United States v. Hope*, 102 F.3d 114, 115 (5th Cir. 1996). Plaintiff severely cut the 83-year-old driver of the car, dropped him off on the side of the road, and proceeded on a crime spree of armed robberies until his arrest in Memphis, Tennessee approximately two months later. *Id.* at 115-16.

As previously stated, the classification of prisoners is a matter within the discretion of prison officials. Here, given plaintiff's history of violence and escapes, plaintiff has failed to show an abuse of discretion. Further, the defendants are providing plaintiff with due process reviews of his classification in accordance with their authority. Thus, plaintiff's claims fail to state a claim upon which relief may be granted and the defendants' motion to dismiss should be granted.

IV.   *Conditions of Confinement*

Plaintiff asserts an extensive list of complaints about the conditions of his confinement including the cleanliness of his cells and eating utensils, the quality and quantity of food served in confinement, a restriction on the amount of property he can maintain in his cell, the fact he is served peanut butter sandwiches during lock-downs approximately four times per year, the lack of condiments such as syrup and mustard, and the alleged indirect exposure to chemical agents.

The Constitution does not mandate comfortable prisons but neither does it permit inhumane ones. *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999). "The Eighth Amendment's prohibition against cruel and unusual punishment imposes minimum requirements on prison officials in the treatment received by and facilities available to prisoners." *Woods v. Edwards*, 51 F.3d 577 (5th Cir. 1995). The Supreme Court noted in *Farmer* that: In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive force against prisoners. The Amendment also imposes duties on these officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must "take reasonable measures to guarantee the safety of the inmates." *Farmer*, 511 U.S. at 823.

A constitutional violation, however, occurs only when two requirements are met. First, there is an objective requirement that the condition "must be so serious as to 'deprive prisoners of the minimal civilized measure of life's necessities,' as when it denies the prisoner some basic human need." *Harris v. Angelina County, Texas*, 31 F.3d 331, 334 (5th Cir. 1994) (citing *Wilson v. Seiter*, 501 U.S. 294, 111 S. Ct. 2321 (1991)). Second, under a subjective standard, the court must determine whether the prison official responsible acted with deliberate indifference to inmate health or safety. *Farmer*, 511 U.S. at 834; see e.g., *Harris*, 31 F.3d at 334-36. The deliberate indifference standard can be appropriately applied to allegations regarding the conditions of confinement. *Woods*, 51 F.3d at 580.

In *Farmer*, the Supreme Court adopted "subjective recklessness as used in the criminal law" as the appropriate definition of deliberate indifference under the Eighth Amendment. *Farmer*, 511 U.S. at 839-40. Under this definition, a prison official cannot be found liable under the Eighth Amendment unless the official knows of and disregards an excessive risk to inmate health or safety. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference. *Farmer*, 511 U.S. at 837. A prison

official acts with deliberate indifference "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id*. at 847.

"Deliberate indifference is an extremely high standard to meet." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Deliberate indifference encompasses only the unnecessary and wanton infliction of pain repugnant to the conscience of mankind. *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1999). To satisfy the exacting deliberate indifference standard, a defendant's conduct must rise "to the level of egregious intentional conduct." *Gobert v. Caldwell*, 463 F.3d 339, 351 (5th Cir. 2006).

While the conditions of plaintiff's confinement may be unpleasant and possibly harsh, plaintiff has failed to show the conditions were objectively so serious as to deprive plaintiff of the minimal civilized measure of life's necessities. Plaintiff has failed to show such conditions rise to the level of a constitutional violation, nor has he satisfied the extremely high standard of showing the defendants acted with deliberate indifference. Accordingly, the defendants' motion to dismiss should be granted.

Additionally, plaintiff complains he is restricted in the amount of personal and legal property he may possess in his cell and that his access to legal materials is reduced due to his housing location. As a result, plaintiff claims research takes him longer than if he were allowed to go to the law library. Further, plaintiff claims he is denied access to other prisoners knowledgeable in the law. However, plaintiff has failed to allege or demonstrate any harm associated with such claims.

Next, to the extent plaintiff complains that the defendants' actions were retaliatory, plaintiff's retaliation claim fails to state a claim upon which relief may be granted. To state a valid claim for retaliation "an inmate must allege the violation of a specific constitutional right and be prepared to establish that but for the retaliatory motive the complained of incident ... would not have occurred." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995). Mere conclusory allegations of retaliation will be insufficient to state a retaliation claim. *See Id*.

In this case, plaintiff has failed to show either a retaliatory motive or causation regarding his claims against the defendants. Plaintiff has failed to produce either direct evidence of motivation or allege a chronology of events from which retaliation may plausibly be inferred. Plaintiff's allegations of retaliation are no more than mere speculation on the part of plaintiff. Thus, plaintiff has failed to state a claim of retaliation under § 1983 against the defendants. Accordingly, the defendants' motion to dismiss should be granted.

V.    *Medical Care*

Plaintiff complains that, because of his custodial status and the requirement that he is to be escorted everywhere he goes, he often is not able to attend medical appointments due to lack of security personnel. Additionally, plaintiff complains that he suffers from bouts of anxiety, depression, and visual and auditory hallucinations but when he has reported these bouts or symptoms to mental health personnel, he has been denied treatment.

The deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment, whether the indifference is manifested by prison doctors or by prison guards in intentionally denying or delaying access to medical care. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999). "Deliberate indifference is an extremely high standard to meet." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Deliberate indifference encompasses only the unnecessary and wanton infliction of pain repugnant to the conscience of mankind. *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1999). To satisfy the exacting deliberate indifference standard, a defendant's conduct must rise "to the level of egregious intentional conduct." *Gobert v. Caldwell*, 463 F.3d 339, 351 (5th Cir. 2006).

The Supreme Court has adopted "subjective recklessness as used in the criminal law" as the appropriate definition of deliberate indifference under the Eighth Amendment. *Farmer*, 511 U.S. 825, 839-40 (1994). Under this definition, a prison official cannot be found liable under the Eighth Amendment unless the official knows of and disregards an excessive risk to inmate health or safety.

The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference. *Farmer*, 511 U.S. at 837. Under exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of the substantial risk. *Id*; *Reeves v. Collins*, 27 F.3d 174 (5th Cir. 1994). Medical records of sick calls, examination, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference. *See Varnado v. Lynaugh*, 920 F.2d 320 (5th Cir. 1991).

While plaintiff complains he missed some medical appointments due to the lack of security personnel required for escorting him, plaintiff admitted medical personnel would make cell-side visits for him. Further, plaintiff has failed to allege or demonstrate harm associated with the format of his medical visits. Additionally, plaintiff claims he suffers from bouts of anxiety, depression, and visual and auditory hallucinations but when he has reported these bouts or symptoms to mental health personnel, he has been denied treatment. However, plaintiff has failed to allege facts demonstrating the defendants possessed a "sufficiently culpable state of mind" rising to the level of deliberate indifference or that his claims are anything more than a disagreement with the medical professionals over the proper course of treatment. *See Farmer*, 511 U.S. at 834, 839-40. Thus, plaintiff's allegations fail to rise to the level of egregious intentional misconduct required to satisfy the exacting deliberate indifference standard. *See Gobert,* 463 F.3d at 351. Negligence does not constitute a violation of the Eighth Amendment. Unsuccessful medical treatment, acts of negligence or medical malpractice, and disagreements as to diagnosis or treatment do not constitute deliberate indifference. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995). Dissatisfaction with medical treatment or diagnosis does not constitute "deliberate indifference" to a serious medical need and does not rise to the level of the denial of a constitutional right. *Estelle v. Gamble*, 429 U.S. at 106; *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). At most, plaintiff's allegations constitute nothing more than negligence or a disagreement with the medical professionals over the proper course of treatment. Plaintiff has failed to show either that the defendants acted with

deliberate indifference or that he was harmed as a result of the defendants' actions. Therefore, the defendants' motion to dismiss should be granted.

Additionally, the defendants' alleged failure to follow prison regulations, rules or procedures does not rise to the level of a constitutional violation. *Stanley v. Foster*, 464 F.3d 565, 569 (5th Cir. 2006); *Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir. 1986). Therefore, plaintiff's allegations fail to state a claim upon which relief may be granted. Thus, the defendants' motion should be granted.

VI.     *Deprivation of Property*

Finally, plaintiff complains that the confiscation of his typewriter without compensation is theft. Plaintiff claims the typewriter was being used to file the grievances it "becomes obvious the motive for the confiscation."

A claim that an individual has been deprived of property by a person acting under color of law states a claim for a violation of the due process clause of the Fifth Amendment to the United States Constitution. Deprivations of property by prison officials, however, even when intentional, do not violate the due process clause so long as an adequate post-deprivation remedy exists. *See Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *see also Geiger v. Jowers*, 404 F.3d 3771, 374 (5th Cir. 2005) (concluding that plaintiff failed to state a claim regardless of whether the deprivation of property was the result of negligence or intentional misconduct). Texas provides such a remedy. *See Murphy v. Collins*, 26 F.3d 541, 543-44 (5th Cir. 1994) (holding that, in Texas, the tort of conversion is an adequate post-deprivation remedy); *Thompson v. Steele*, 709 F.2d 381, 383 (5th Cir. 1983) (holding that a state action for damages is an adequate remedy), *cert. denied*, 464 U.S. 897 (1983). As a result, plaintiff has failed to establish his constitutional rights were violated in connection with the deprivation of property. Further, plaintiff's claim of retaliation, as explained above, is speculative and conclusory. Thus, plaintiff's allegations are insufficient to state a claim upon which relief may be granted. Accordingly, plaintiff's claims are frivolous and fail to state a claim upon which relief may be granted.

Recommendation

The defendants' motion to dismiss should be granted. Accordingly, plaintiffs' complaint should be dismissed with prejudice.

Objections

Within fourteen days after being served with a copy of the magistrate judge's report, any party may serve and file written objections to the findings of facts, conclusions of law and recommendations of the magistrate judge. 28 U.S.C. § 636 (b)(1)(C).

Failure to file written objections to the proposed findings of facts, conclusions of law and recommendations contained within this report within fourteen days after service shall bar an aggrieved party from the entitlement of *de novo* review by the district court of the proposed findings, conclusions and recommendations and from appellate review of factual findings and legal conclusions accepted by the district court except on grounds of plain error. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

SIGNED this 9th day of March, 2020.

_____
Zack Hawthorn
United States Magistrate Judge